**NATIONAL MINING ASSOCIATION, et al., Appellants,**

v.

**UNITED STATES DEPARTMENT OF the INTERIOR, et al., Appellees.**

Nos. 94–5351, 94–5353, 94–5377 and 95–5028.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 11, 1995.

Decided Dec. 12, 1995.

Joseph M. Klise argued the cause, for appellants, with whom John A. MacLeod, Thomas C. Means, Harold P. Quinn, Jr., and Dean K. Hunt, were on the briefs. Gregory E. Conrad was on the brief, for appellant Interstate Mining Compact Commission.

Lisa E. Jones, Attorney, United States Department of Justice, argued the cause, for appellees, with whom Lois J. Schiffer, Assistant Attorney General, and J. Carol Williams, Attorney, were on the brief.

Glenn P. Sugameli and Thomas J. Fitzgerald were on the brief, for appellee National Wildlife Federation, et al.

Before SILBERMAN, SENTELLE and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

Appellants, National Mining Association (the Association) and the Interstate Mining Compact Commission, appeal the district court's summary judgment disposing of their claims that the Department of Interior acted arbitrarily or capriciously in denying a rulemaking petition. The petition sought to repeal a regulation, promulgated under the Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. § 1201 *et seq.* (SMCRA), which permits the Department to issue notices of violation to mine operators in so-called "primacy" states. We affirm the order of the district court, although—as to those claims over which we conclude the district court lacked jurisdiction—on a different rationale.

## I.

The Department is charged with enforcing the provisions of SMCRA. Any state, however, has the option of becoming the primary enforcement body within its borders if it promulgates a state program that is approved by the Department. In such a state (a "primacy" state), federal enforcement authority is limited. *See generally In re Permanent Surface Mining Regulation Litig.*, 653 F.2d 514, 516 (D.C.Cir.) (en banc), *cert. denied sub nom. Peabody Coal Co. v. Watt*, 454 U.S. 822, 102 S.Ct. 106, 70 L.Ed.2d 93 (1981). The Department retains oversight and backup enforcement authority including the power to issue a notice of violation (NOV) to a mine operator who, although not posing an imminent danger to the environment or to the health or safety of the public, is not satisfying a permit condition or a requirement of SMCRA. 30 U.S.C. § 1271(a)(3) (1986). A NOV "describes the violation and what remedial action needs to be [taken] to correct it." The statute provides that NOVs may be issued when violations are discovered during certain, enumerated types of inspections. *Id.* The rule at issue, 30 C.F.R. § 843.12(a)(2) (1995), permits the Department to issue a NOV based on inspections other than those set forth in § 1271(a)(3) if it determines that there is a violation of SMCRA, the state program, or a permit condition and the state does not take appropriate action within 10 days of being notified of the violation by the Department.[1]

---

1. There is at least one other circumstance in which a 10–day notice may be used to inform a state of the need to take corrective action. Under § 1271(a)(1), if the Department has reason to

The Department proposed to amend the rule and sought comments in 1981, two years after it was promulgated, expressing concern over whether the rule exceeded the statutory grant of authority. In 1982, the Department decided to prepare an environmental impact statement with respect to its SMCRA regulations and solicited further public comment on the NOV rule. Later that year, the Department promulgated new final rules but indicated that it was deferring action on the NOV rule until the environmental impact statement was completed. On March 3, 1983, the Department announced that the NOV rule had been "properly and lawfully promulgated; therefore there is no need to reconsider the issue."

In 1986, a group of coal industry participants petitioned for a rulemaking to repeal the NOV rule and to modify the standard under which the adequacy of state responses to 10–day notices is determined. The petition contended that the NOV rule ought to be repealed because (1) it did not comport with SMCRA, was inconsistent with the statute's legislative history, and was contrary to case law that had developed since the enactment of SMCRA; and (2) the Department was using its NOV power in primacy states to replace its judgment for that of the state regulatory authorities on a case-by-case basis, catching mine operators in the middle of disputes between federal and state regulators while large, systemic problems went unremedied. The Department published the petition and sought comments on whether it should institute a rulemaking proceeding. After reviewing the comments submitted, the Department granted only that portion of the petition concerning the 10–day notices. The Department, in denying the portion of the petition seeking to repeal the NOV rule, explained that the question whether the NOV rule should be retained had already been considered in previous rulemakings. It also noted statistics showing that NOVs were issued in a small number of primacy states in limited and decreasing numbers, the need to retain NOV authority to comply with court

orders, the Department's belief that the rule encouraged operator compliance with state programs, and the desire of the Department to be able to address specific problems without resort to the lengthy process of substituting federal for state primary enforcement authority. Problems with the NOV rule, the Department stated, would be ameliorated with the adoption of a more deferential standard concerning the adequacy of a state's response to a 10–day notice. The rulemaking on the 10–day notice standard resulted in a rule under which a state response to a 10–day notice is deemed adequate if it is not "arbitrary, capricious, or an abuse of discretion."

Appellants petitioned for review in the district court. The court, noting the highly deferential standard of review given an agency's denial of a petition for rulemaking, concluded that the Department's decision to deny the petition was reasonable. The court also analyzed appellants' claim that the NOV rule exceeded the statutory grant of authority and determined that it did not. Appellants concentrate their arguments here on whether the rule is permitted by SMCRA. They argue that the language, structure, purpose, and legislative history of the statute preclude issuance of NOVs in primacy states. It is argued that the NOV power is derived solely from § 1271(a)(3), which permits the issuance of NOVs based on certain types of inspections. The NOV rule, vesting authority to issue NOVs after "any inspection" other than those listed in § 1271(a)(3) is, appellants contend, *ultra vires* the statute and frustrates Congress' concern with allowing states to have primary enforcement responsibility. The Department's alleged increasingly extensive use of NOVs further undermines Congress' efforts to fix exclusive jurisdiction over intra-state mining operations in state regulatory authorities.

The government and defendant-intervenor below, National Wildlife Federation, respond that the statute does authorize the NOV rule, and present their own construction of the

believe that a mine operator is violating a requirement of SMCRA, it must notify the state regulatory authority. If the state fails to take appropriate action within 10 days then the De-

partment has the authority to inspect the mine. In certain circumstances, based on this inspection, the Department may order the cessation of mining under § 1271(a)(2).

relevant sections of SMCRA along with their own interpretation of the legislative history. The government argues that its construction of the statute as permitting the NOV rule is a permissible one under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984), and that state primacy is not so ascendant a statutory purpose that the NOV rule cannot stand.

## II.

### A.

We consider at the outset whether either of the appellants has established that it is injured by agency action, "one of the elements necessary to establish the 'irreducible constitutional minimum of standing.'" *Marathon Oil Co. v. FERC,* 68 F.3d 1376, 1378 (D.C.Cir.1995) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992)). Having reviewed the parties' supplemental briefs on the question, we are satisfied that the Association has suffered sufficient injury-in-fact for purposes of Article III. Since we conclude that one party has standing, we need not decide whether the Interstate Mining Compact Commission also has standing. *See, e.g., United States Dept. of Labor v. Triplett,* 494 U.S. 715, 719, 110 S.Ct. 1428, 1431, 108 L.Ed.2d 701 (1990); *Environmental Action v. FERC,* 996 F.2d 401, 407 (D.C.Cir.1993).

If the Association claimed that it was injured only because its members were regulated by federal authorities but wished to be regulated instead by state authorities, we would have doubts as to whether the Association had standing. We have reserved this question in SMCRA litigation before. *See National Wildlife Federation v. Hodel,* 839 F.2d 694, 708 n. 9 (D.C.Cir.1988). The Association, however, asserts that it has standing as the representative of mine operators caught in the regulatory crossfire between state and federal authorities, and cites a series of cases in which mine operators have incurred expenses attempting to appease the two competing regulators. *See, e.g., Clinchfield Coal Co. v. Hodel,* 640 F.Supp. 334 (W.D.Va.1985) (enjoining the Department from requiring mine operator to relocate drainage ditch when state regulatory authority explicitly authorized ditch), *rev'd for lack of jurisdiction sub nom. Clinchfield Coal Co. v. Department of the Interior,* 802 F.2d 102 (4th Cir.1986); *Willowbrook Mining Co.,* 108 I.B.L.A. 303 (1989); *Harman Mining Corp.,* 110 I.B.L.A. 98 (1989). The Association asserts that its members are, at best, subject to costly uncertainty as to which standards must be met in their mining operations, and are, at worst, responsible for expensive efforts to redo or undo actions taken at the behest of the state authority with which the Department later disagrees.

We agree that the Association is sufficiently injured-in-fact to establish Article III standing. In *National Coal Ass'n v. Lujan,* 979 F.2d 1548, 1552 (D.C.Cir.1992), we held that the progenitors of the Association (the National Coal Association and the American Mining Congress) had standing to challenge a rule under which "stiff individual penalties" were visited upon coal company officers for willful violations of SMCRA. *Id.* at 1552. Even though no individual officers had been cited under the rule, we held that, because the purpose of the rule was to "propel *corporate* action" by the imposition of "[s]ure and swift" individual penalties, *id.* (emphasis in original), the corporate members of the Association were sufficiently injured-in-fact. The NOV rule is like the civil penalty provision in some respects, and the differences provide further support for the Association's standing here. To the extent that the NOV rule is designed—as the Department has said that it is—to compel compliance with SMCRA and with state programs, the NOV rule is indistinguishable from the civil fine provision. To the extent that the NOV rule creates uncertainty and actual conflicts between state enforcement authorities and the Department which force mine operators to expend money to satisfy one and then the other, the NOV rule can be said to cause greater injury to mine operators than the civil penalty provision. We thus believe that the Association—through the injury to its members—has established Article III injury-in-fact.

### B.

Appellants' jurisdictional difficulties are not over. SMCRA provides that "[a]ny ac-

tion by the Secretary promulgating national rules or regulations ... shall be subject to judicial review in the United States District Court for the District of Columbia Circuit." 30 U.S.C. § 1276(a)(1) (1986). The Act further provides:

A petition for review of any action subject to judicial review under this subsection shall be filed in the appropriate Court within sixty days from the date of such action, *or after such date if the petition is based solely on grounds arising after the sixtieth day.*

*Id.* (emphasis added). We have repeatedly held that temporal limitations on judicial review are jurisdictional in nature. *See, e.g., Edison Elec. Institute v. EPA,* 996 F.2d 326, 331 (D.C.Cir.1993); *Simmons v. ICC,* 716 F.2d 40, 46 (D.C.Cir.1983); *Natural Resources Defense Council v. NRC,* 666 F.2d 595, 602 (D.C.Cir.1981). To the extent that appellants' challenge to the NOV rule is based on grounds that existed within 60 days of the NOV rule's adoption (or readoption), the district court did not have jurisdiction over the challenge.

■ Appellants' essential case, although phrased as a petition for a new rulemaking that would repeal the rule, is based on the claim that the rule is *ultra vires.* It is undisputed that all the arguments appellants make in support of that proposition were available to them at the time the rule was adopted. Indeed, the agency *highlighted* these concerns over whether the statute authorized the NOV rule—concerns identical to those now raised by appellants—both when it adopted the NOV rule in 1979 and when it considered repealing it in 1982. Appellants cite cases decided in the meantime only to bolster their argument that the statute does

not authorize the rule. Congress in § 1276(a)(1) struck a careful balance between the need for administrative finality and the need to provide for subsequent review in the event of unexpected difficulties.[2] Permitting review of appellants' petition based on grounds clearly available within 60 days of the rule's promulgation would thwart Congress' well-laid plan.

Appellants rely, however, on our cases that have permitted challenges to rules beyond the statutory period. We have repeatedly recognized that such challenges may be brought as petitions for a new rule and thereafter as petitions for review of an agency denial. *See, e.g., Edison Elec. Inst. v. ICC,* 969 F.2d 1221, 1229 (D.C.Cir.1992); *Public Citizen v. Nuclear Regulatory Comm'n,* 901 F.2d 147, 152 (D.C.Cir.), *cert. denied sub nom. Nuclear Management & Resources Council v. Public Citizen,* 498 U.S. 992, 111 S.Ct. 536, 112 L.Ed.2d 546 (1990); *NLRB Union v. FLRA,* 834 F.2d 191, 196 (D.C.Cir.1987); *Functional Music, Inc. v. FCC,* 274 F.2d 543, 546 (D.C.Cir.1958), *cert. denied,* 361 U.S. 813, 80 S.Ct. 50, 4 L.Ed.2d 60 (1959).[3] But in those cases, Congress did not specifically address the consequences of failure to bring a challenge within the statutory period. Although it was argued that Congress meant totally to foreclose review after the statutory period, the statutes involved, like the Hobbs Act, did not explicitly say that. Here, Congress directly focused on the issue, stating that review is barred unless and only to the extent that it is sought on grounds arising after the sixtieth day. Appellants suggest that nevertheless the congressional bar extends only to direct attacks on a rule after the 60–day period, not to the procedural device utilized in *Function-*

---

**2.** Congress has adopted similar limitations on judicial review in other environmental statutes. *See, e.g.,* Clean Water Act, 33 U.S.C. § 1369(b)(1) (review available after 120 days from challenged action "only if such application is based solely on grounds which arose after such 120th day"); Safe Drinking Water Act, 42 U.S.C. § 300j–7(b) (1991) (review available after 45 days "if the petition is based solely on grounds arising after the expiration of such period"); Noise Control Act, 42 U.S.C. § 4915(a) (1995) (review available after 90 days "if such petition is based solely on grounds arising after such ninetieth day"); Resource Conservation and Recovery Act, 42 U.S.C.

§ 6976(a)(1) (1995) (review available after 90 days if "based solely on grounds arising after such ninetieth day"); Clean Air Act, 42 U.S.C. § 7607(b)(1) (1995) (review available for 60 days, "except that if such petition is based solely on grounds arising after such sixtieth day, then any petition for review under this subsection shall be filed within sixty days after such grounds arise").

**3.** In *NLRB Union,* we described the situations in which we have permitted out-of-time challenges to regulations. 834 F.2d at 195–97.

al Music and its progeny—petitioning for a new rulemaking and seeking review of its denial. We reject that interpretation as a misreading of our precedent. We have never held that this procedural device, standing alone, was sufficient to avoid the congressional bar. See, e.g., NLRB Union, 834 F.2d at 195. Such an interpretation would make a mockery of Congress' careful effort to force potential litigants to bring challenges to a rule issued under this statute at the outset unless they can meet the after-arising test.[4] When SMCRA was enacted, the rule of Functional Music was well-established in this circuit and therefore Congress appears to have devoted particular efforts to express its intention on the question.

■ The Association argues that, even under our reading of SMCRA's 60–day limit, it filed its petition in the district court in time. It relies on the "reopener doctrine." Under this doctrine, " 'the period for seeking judicial review may be made to run anew when the agency in question by some new promulgation creates the opportunity for renewed comment and objection.' " Edison Elec. Institute, 996 F.2d at 331 (quoting Ohio v. EPA, 838 F.2d 1325, 1328 (D.C.Cir.1988)). A number of the agency's actions are argued to have reopened the NOV rule to our review. The Association points to the Department's publication and request for comment on the petition for rulemaking. The agency's own regulation concerning publication of petitions requires publication for comment of a petition that "has a reasonable basis," 30 C.F.R. § 700.12(c) (1995). Therefore, it is argued, the Department implicitly reopened the NOV rule when it published the petition. The Association further contends that the Department's action on the petition amounted to "renewed adherence" to the NOV rule, which is "substantively reviewable." Public Citizen, 901 F.2d at 150 (citation omitted). And, since the NOV rule and the 10–day notice standard are inextricably linked, the Department's 10–day notice rulemaking trig-

gered the 60–day period for the review of the NOV rule.

■ We are not persuaded. The reopener doctrine allows judicial review where an agency has—either explicitly or implicitly— undertaken to "reexamine its former choice." Id. at 151. We do not discern in anything proffered by the Association evidence that the Department reexamined the NOV rule. The decision to publish a petition for rulemaking, even if that decision is based on the agency's belief that the petition sets forth a reasonable basis (we are not certain that the Department had such a belief—the petition was published for the stated reason that there was "public interest on this topic"), is not evidence of a reexamination of the policy at issue in the petition. At the point of publishing a petition for rulemaking—particularly when publishing the petition in this case—an agency has heard from only one side of the rulemaking issue and has itself said nothing on the merits of the petition. That agency may still, as the Department did in this case, deny the petition without having rethought the subject policy. Nor are we impressed by appellants' argument that the Department's undertaking of the rulemaking concerning the 10–day notice standard reopened the NOV rule. The Department itself said that it was doing nothing of the kind. And the fact that the 10–day notice rule is related to the NOV rule (among other rules) is not sufficient to restart the 60–day clock on the NOV rule. We can scarcely imagine any rulemaking that does not impact at least several rules that are not explicitly at issue in the rulemaking. Permitting any affected rule to be reopened for purposes of judicial review by a rulemaking that does not directly concern that rule would stretch the notion of "final agency action" beyond recognition and do little to encourage agencies to respond favorably to any petition for rulemaking.

■ The Department's statement of denial of the petition for rulemaking to repeal the

---

4. The closest that we have come to extending the rule of Functional Music to SMCRA was in Montana v. Clark, 749 F.2d 740 (D.C.Cir.1985), cert. denied sub nom. Montana v. Hodel, 474 U.S. 919, 106 S.Ct. 246, 88 L.Ed.2d 255 (1985). There, in a footnote, we adverted to the possibility that Functional Music might bear on an out-of-time petition for review under SMCRA. Id. at 744 n. 8. That was, of course, only dicta.

NOV rule presents a closer question. We are, however, convinced that the denial does not evince the kind of agency reconsideration that we have held sufficient to give rise to judicial review. Of course, that a statement accompanies the denial of a petition for rulemaking is not, without much more, sufficient to trigger the reopener doctrine. An agency is normally obliged under the Administrative Procedure Act to issue some sort of explanation when it denies a petition. 5 U.S.C. § 555(e) (1977). In the Federal Register statement that accompanied the denial of the petition, the Department discussed the past, full-dress, notice-and-comment rulemakings on the precise questions presented in the petition and noted that the Department had, at those times, satisfied itself that the NOV rule was properly promulgated. The Department also responded to assertions in the petition and comments that the NOV rule was being used excessively with statistics demonstrating limited use in a limited number of states. Absent from this petition for rulemaking, but present in cases such as *Public Citizen*, was any indication that the Department had undertaken a serious, substantive reconsideration of the NOV rule. Unlike the Nuclear Regulatory Commission in *Public Citizen*, the Department did not set out a formal "evaluation period," 901 F.2d at 151, after which it decided to stand by the NOV rule. An application of the "reopener doctrine" would have been appropriate in 1983. At that time, the Department explicitly requested comment on the repeal of the NOV rule (as opposed to merely requesting comment on whether to open a rulemaking) and then, having received comment and having repromulgated other rules while explicitly deferring action on the NOV rule, the Department retained it. If appellants had sought to petition for review of the NOV rule (first promulgated in 1979) within 60 days after March 3, 1983—the date on which the Department ended its reevaluation of the NOV rule and stuck by it—we would properly have exercised jurisdiction over that petition. We believe, however, that the Depart-

ment did not reopen the NOV rule in 1987 or 1988 such that the judicial review limitation in SMCRA began to run anew. The district court thus did not have jurisdiction to review the NOV rule.

### C.

█ The district court properly exercised jurisdiction as to the aspects of the petition for review that remain: those based on grounds that arose after the sixtieth day. Although appellants concentrated their energies on attacking the authority of the Department to enact the regulation, they did provide, in both their petition for rulemaking and in their briefs here, other grounds to support the *repeal* of the NOV rule—appellants particularly point to the conflict between state regulatory authorities and the Department created by the Department's use of its NOV authority. Unfortunately for appellants, the scope of our review of an agency's denial of a petition for rulemaking is quite limited. *See, e.g., Cellnet Communication, Inc. v. FCC,* 965 F.2d 1106, 1111 (D.C.Cir.1992) ("an agency's refusal to initiate a rulemaking is evaluated with deference so broad as to make the process akin to non-reviewability"); *National Customs Brokers & Forwarders v. United States,* 883 F.2d 93, 96 (D.C.Cir.1989) (refusal to institute rulemaking proceedings is subject to review of "extremely limited, highly deferential scope"). The petition for rulemaking asserted that the Department's actions under the NOV rule were frustrating the state primacy scheme set out by Congress. The Department responded that, as it had concluded before, the rule was authorized by the statute so that the Department's use of the rule could hardly frustrate the statute's scheme. And, the Department noted that the incidence of NOVs under the rule was limited to a small number of states, and in any event was declining in each successive year such that whatever unwarranted intrusion the NOV rule created was diminishing over time.[5] Given the limited scope of our review,

---

5. Appellants suggest that, as it turns out, the Department was not particularly prescient on this score. They cite statistics to the effect that the Department has in fact issued an increasing number of NOVs. We may not consider this non-record information in deciding whether the Department acted reasonably in denying the rulemaking. *See* § 1276(b) ("The court shall

and given the Department's adequate response to the concerns expressed in the petition based on grounds arising after the sixtieth day, we do not think that the Department acted unreasonably in denying the petition for rulemaking.

\* \* \* \* \* \*

Although the district court acted on the merits as to all claims and we conclude that the court lacked jurisdiction as to those claims based on grounds existing within 60 days of the promulgation or repromulgation of the NOV rule, we have "discretion to uphold a summary judgment under a legal theory different from that applied by the trial court, and rest the affirmance on any ground that finds support in the record." *Planned Parenthood Ass'n of Utah v. Schweiker,* 700 F.2d 710, 720 n. 23 (D.C.Cir. 1983) (internal quotations and citations omitted). We therefore affirm the district court's judgment dismissing all counts.

hear such petition or complaint solely on the record made before the Secretary.").