LOUISIANA ENVIRONMENTAL
ACTION NETWORK, et al.,
Petitioners,

v.

Carol M. BROWNER, Administrator,
and United States Environmental
Protection Agency, Respondents,

Chemical Manufacturers Association,
et al., Intervenors.

Nos. 94–1042, 94–1049, 94–1054,
94–1057 and 94–1058.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 20, 1995.

Decided July 9, 1996.

Henry V. Nickel, Washington, DC, argued the cause for petitioners Alabama Power Company, et al., with whom Norman W. Fichthorn and Evelina J. Norwinski were on the briefs. Melvin S. Schulze, Atlanta, GA, and Lee B. Zeugin, Washington, DC, entered appearances.

David M. Driesen, Washington, DC, argued the cause for petitioners Louisiana Environmental Action Network, et al., with whom Sharon Buccino and David G. Hawkins were on the briefs. A brief was also filed by the same parties as intervenors.

William H. Lewis, Jr., Washington, DC, argued the cause for petitioners Clean Air Implementation Project, et al., with whom Michael A. McCord, David F. Zoll, Washington, DC, Nancy C. Cookson, Susan R. Connella, Arlington, VA, and V. Mark Slywynsky, Detroit, MI, were on the briefs. A separate brief was also filed by the same parties as intervenors. Hunter L. Prillaman, Washington, DC, and K. Denise Grant, Arlington, VA, entered appearances.

Karen L. Egbert, United States Department of Justice, Washington, DC, argued the cause for respondents, with whom Lois J. Schiffer, Assistant Attorney General, was on the brief. Patricia A. Embrey, Attorney, entered an appearance.

Before: BUCKLEY, SENTELLE and RANDOLPH, Circuit Judges.

SENTELLE, Circuit Judge:

Section 112($l$) of the 1990 Amendments to the Clean Air Act permits the Environmental Protection Agency ("EPA") to delegate its authority and responsibility to implement various air-pollution requirements to a state if that state's program to regulate air pollution receives the EPA approval. *See* 42 U.S.C. § 7412($l$). In a rule-making pursuant to this section, *see* 40 C.F.R. § 63.90–.96, the EPA established procedures to use in deciding whether it should approve state rules or programs and in governing the ramifications of such approval. *See* 40 C.F.R. § 63.90. Three petitioners have challenged these "delegation rules," alleging that the rules are illegal for various reasons, including that the rules violate the Clean Air Act or constitute an improper delegation of federal power.

■ We cannot address the merits of any of these claims. An Article III court cannot entertain the claims of a litigant unless that party has demonstrated constitutional and prudential standing, *see, e.g., Warth v. Seldin,* 422 U.S. 490, 517–18, 95 S.Ct. 2197, 2214–15, 45 L.Ed.2d 343 (1975), and unless its claim is constitutionally and prudentially ripe. *See, e.g., Office of Com. of United Church of Christ v. FCC,* 826 F.2d 101, 104 n. 2 (D.C.Cir.1987). None of these petitioners have demonstrated each of these essential predicates of judicial review. If, at some later time, one or more of the parties develops a justiciable claim, they will be able to seek judicial relief. *See Eagle–Picher Indus. v. EPA,* 759 F.2d 905, 913–14 (D.C.Cir.1985).

## BACKGROUND

Under the Clean Air Act as amended, *see* Amendments to the Clean Air Act, Pub.L. No. 101– 549, Title III, § 301, 104 Stat. 2531 (1990), *as codified at* 42 U.S.C. § 7412 (1995), the EPA is authorized and required, *inter alia,* to "promulgate regulations establishing emissions standards for" a full range of major sources of hazardous air pollutants. 42 U.S.C. § 7412(d). After establishing these federal standards, the EPA is authorized to enforce them through appropriate administrative, civil, or (with the cooperation of the Attorney General) criminal actions. 42 U.S.C. § 7413(a)(3). In addition to mandating federal regulation of emissions of air pollutants, the Act expressly does not preempt states from adopting and enforcing their own regulations, with certain exceptions not here pertinent. 42 U.S.C. § 7416. Indeed, section 7412(*l*) declares that each state may develop and submit to the Administrator "a program for the implementation and enforcement ... of emissions standards and other requirements" for covered air pollutants.

The Act further empowers the Administrator of the EPA to approve or disapprove such state implementation plans based on statutory criteria, including the adequacy of the authorities contained in the program to assure compliance by emissions sources with applicable standards, regulations, and requirements. 42 U.S.C. § 7412(*l*)(5). In 1993, the EPA promulgated regulations to establish the standards the EPA will use in determining whether to approve a state's plan. *See* 40 C.F.R. § 63.90. These delegation rules, adopted pursuant to section 7412(*l*), make clear that federal authorities will enforce an approved state program "in place of" the otherwise applicable federal regulations. *Id.* Three groups of petitioners challenge these delegation rules.

The first group, who style themselves "the environmental petitioners," are Louisiana Environmental Action Network, Manasota–88 and the Natural Resources Defense Council (collectively "LEAN"). The environmental petitioners claim that the delegation rules do not adequately comply with the Clean Air Act, arguing that the Act mandates that state standards could not be less stringent than applicable federal standards, and that the delegation rules do not adequately assure compliance with this congressional mandate. Indeed, these petitioners argue that EPA's rules permit states to exempt sources of air pollution within their borders from the detailed requirements of the Clean Air Act.

The second group of petitioners, "the utilities petitioners," are Alabama Power Company, the Edison Electric Institute, the National Rural Electric Cooperative Association, the American Public Power Association, and a number of individual electric utilities (collectively "Alabama Power"). The utilities petitioners contend that the EPA's rules are invalid because they allow the agency to exceed its powers under the Act by making federally enforceable standards that are more stringent than the Act mandates. Alternatively, they contend that if the EPA's rules correctly interpret section 7412(*l*), then section 7412(*l*) is an unconstitutional standardless delegation of power.

The third petition is a joint petition by trade associations, specifically, the Clean Air Implementation Project, the Chemical Manufacturers Association, and the American Automobile Manufacturers Association, Inc. (collectively "CAIP"). This petition echoes the claims of Alabama Power and adds that the delegation rules arbitrarily permit state and federal authorities to compel compliance with newly approved, more stringent state

regulations without adequate notice under federal law.

Because these petitions present troubling questions of justiciability, we directed the parties to file additional briefs on standing. After reviewing the arguments of the parties, we conclude, for the reasons set out below, that only CAIP even arguably has standing, and that the claim of CAIP is not prudentially ripe.

## DISCUSSION

"Article III of the Constitution confines the federal courts to adjudicating actual 'cases' and 'controversies.'" *Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). Prudence similarly restrains courts from hastily intervening into matters that may best be reviewed at another time or in another setting, *see Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515–16, 18 L.Ed.2d 681 (1967), especially when the uncertain nature of an issue might affect a court's "ability to decide intelligently." *American Trucking Ass'ns, Inc. v. ICC,* 747 F.2d 787, 789–90 (D.C.Cir.1984). Therefore, before we reach the merits of any claim, we must first assure ourselves that the dispute lies within the constitutional and prudential boundaries of our jurisdiction.

■ These limits on the authority of the federal judiciary have given rise to several "'doctrines that cluster about Article III— ... standing[,] mootness, ripeness, political question, and the like ...,'" by which we test the fitness of controversies for judicial resolution. *Allen,* 468 U.S. at 750, 104 S.Ct. at 3324 (quoting *Vander Jagt v. O'Neill,* 699 F.2d 1166, 1178–79 (D.C.Cir.1982) (Bork, J., concurring)). Our standing inquiry focuses on the appropriateness of a party bringing the questioned controversy to the court. It requires that anyone who would invoke the aid of the courts in resolving a complaint must allege, at a minimum, an actual or imminent injury personal to the plaintiff that is fairly traceable to the defendant's conduct and that is likely to be redressed by the requested relief. *Allen,* 468 U.S. at 751, 104 S.Ct. at 3324. Having measured LEAN's claim against these standards, we determine

that it falls short at the very first step: LEAN has not demonstrated an imminent injury personal to itself.

■ In its supplemental brief addressing the question of standing, LEAN argued that, because the delegation rules permit the EPA not to enforce federal air-pollution standards in a particular state *as soon as* the EPA approves that state's *proposed* program, the rules permit a potentially harmful enforcement gap if a state seeks section 7412 approval prior to that state putting its proposed program into effect. Assuming, for purposes of standing, that LEAN is correct on the merits, *see In re Thornburgh,* 869 F.2d 1503, 1511 (D.C.Cir.1989), and that the delegation rules may make it possible for an "enforcement gap" to develop, we nonetheless conclude that LEAN has not demonstrated an injury sufficient for standing.

■ At first glance, LEAN's claimed injury may be thought to collapse of its own unmanageable size. Fundamental standing doctrine instructs that, "when the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction." *Warth,* 422 U.S. at 499, 95 S.Ct. at 2205 (citations omitted). In its supplemental brief, however, LEAN expressly asserted that a delay in enforcing air-pollution standards in one state should establish an injury personal to its interests because "members of petitioning groups ... must breathe." Because it is difficult to imagine a grievance more generalized than one shared by all persons who breathe, we might have declined jurisdiction as to LEAN's claims on this ground alone were we acting on an uncluttered slate.

The precedential slate on standing, however, is hardly uncluttered. *See Allen v. Wright,* 468 U.S. 737, 751–52, 104 S.Ct. 3315, 3324–25, 82 L.Ed.2d 556 (1984). We have previously observed, in a statement based on *United States v. Students Challenging Regulatory Agency Procedures (SCRAP),* 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973), that individuals may have standing to challenge an EPA action that will assuredly

affect the quality of air nationwide, even though their claims may be no less general than that articulated here. *See Center for Auto Safety v. Ruckelshaus,* 747 F.2d 1, 3 n. 2 (D.C.Cir.1984). Though *SCRAP* has since been declared an outlier by the Supreme Court, *see Lujan v. National Wildlife Federation,* 497 U.S. 871, 889, 110 S.Ct. 3177, 3189, 111 L.Ed.2d 695 (1990), that Court has not yet explicitly disavowed *SCRAP*'s expansive rationale. *Cf. Gersman v. Group Health Ass'n, Inc.,* 975 F.2d 886, 897 (D.C.Cir.1992) (stating that courts must seek to reconcile their decisions with existing controlling authority, even when aspects of that authority may no longer be clearly viable). In light of this precedent, then, we hesitate to deny standing to LEAN simply because of the general nature of its asserted injury.

■ But this precedent hardly compels us to find that LEAN has in fact established standing in this case. To demonstrate an injury sufficient for standing, a litigant must show some "invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (citations and internal quotation marks omitted). At least the petitioners in both *SCRAP* and *Center for Auto Safety* challenged agency actions that might have had an imminent and concrete effect on individuals throughout the country. *See SCRAP,* 412 U.S. at 672–80, 93 S.Ct. at 2408–12 (discussing the challenge to the ICC's decision to permit railroads throughout the country to increase freight rates); *CAS,* 747 F.2d at 2–3 (noting that petitioners attacked a plan negotiated between General Motors and the EPA that would have allowed General Motors not to recall certain makes of vehicles sold throughout the nation). In contrast, LEAN has not carried its burden of showing either the concreteness or imminence of its asserted "enforcement gap."

LEAN has not established that an enforcement gap will concretely and personally affect it (or its members). *See, e.g., Defenders of Wildlife,* 504 U.S. at 563, 112 S.Ct. at 2137–38. First, if no state seeks "delega-tion" of EPA's authority under the challenged rules, no "enforcement gap" can result. Second, even if we suppose that an enforcement gap may occur in one state, we cannot assume that that gap will affect areas actually frequented by LEAN's members, as is essential for LEAN to assert this type of concrete and particularized injury. *See, e.g., National Wildlife Federation,* 497 U.S. at 887–89, 110 S.Ct. at 3188–89; *Sierra Club v. Morton,* 405 U.S. 727, 734–35, 92 S.Ct. 1361, 1365–66, 31 L.Ed.2d 636 (1972).

Nor has LEAN established that an enforcement gap is imminent. *See Defenders of Wildlife,* 504 U.S. at 564 n. 2, 112 S.Ct. at 2138 n. 2 (citing *Whitmore v. Arkansas,* 495 U.S. 149, 158, 110 S.Ct. 1717, 1724, 109 L.Ed.2d 135 (1990)). The enforcement gap feared by LEAN cannot result unless some state seeks, under the delegation rules, to substitute its own program for otherwise applicable federal regulations. Even if we assume that a state will seek such substitution, the asserted enforcement gap still cannot develop unless the regulations within that state's program will not be in effect at the time the EPA might approve the state's program. And even if we assume that both of these predicates take place, LEAN's asserted injury still cannot occur unless the EPA, despite the lack of state regulations currently in place, nonetheless approves the state's program. This multi-tiered speculation must defeat LEAN's claim of injury. *See, e.g., O'Shea v. Littleton,* 414 U.S. 488, 497, 94 S.Ct. 669, 676–77, 38 L.Ed.2d 674 (1974), *as cited in Whitmore,* 495 U.S. at 157–58, 110 S.Ct. at 1724–25. We thus conclude that LEAN's asserted "enforcement gap" is not only too vague to establish a concrete injury, but that it is too remote a possibility to establish an imminent one.

■ Like LEAN, Alabama Power also does not state a genuine injury that a federal court can constitutionally address. Alabama Power conceives its injury in terms of the invasion of its rights that would occur if the EPA, under the challenged regulations, approved a state requirement and enforced it as a federal requirement, even though that requirement was more stringent than the EPA could implement on its own under the

Clean Air Act. Even assuming that the petitioner is correct on the merits, this claim does not state an injury sufficiently imminent and concrete for constitutional standing. *See Defenders of Wildlife*, 504 U.S. at 560, 112 S.Ct. at 2136.

The phrasing of the petitioner's own argument on standing illustrates its insufficiency. Throughout its brief, Alabama Power described the dire consequences that would befall it *if* a state were to adopt a requirement more stringent than the EPA itself could promulgate and *if* the EPA were then to federalize it. Yet, Alabama Power has identified no state—never mind a state in which one of the utilities petitioners operates—that has adopted any more stringent rule which is or is about to be federalized by the EPA. Instead, it has relied on only hypothetical harms to the petitioning utilities. Should some state whose laws personally affect any of the utility petitioners actually seek section 7412 approval for some more stringent state regulation, then perhaps that may establish a concrete injury. If so, that will be soon enough to determine the merits of this type of claim.

Admittedly, our dismissal of Alabama Power's claim may partake of ripeness as well as of standing. That ripeness considerations should influence our standing analysis, however, is neither surprising nor troublesome. As the Supreme Court has observed, these threshold doctrines "relate ... in different though overlapping ways to an idea, which is more than an intuition but less than a rigorous or explicit theory, about the constitutional and prudential limits to the powers of an unelected, unrepresentative judiciary in our kind of government." *Allen*, 468 U.S. at 750, 104 S.Ct. at 3324 (quoting *Vander Jagt v. O'Neill*, 699 F.2d at 1178) (Bork, J., concurring). We will examine more closely the doctrine of ripeness in our analysis of the justiciability of CAIP's claim.

Moreover, even if we assumed that a state whose regulations would personally affect one of the utility petitioners would seek federal enforcement of its requirements, the enforcement of state regulations by state *and* federal agents, instead of solely by state agents, hardly impends certain injury to Alabama Power. *See National Min. Ass'n v. Dep't of Interior*, 70 F.3d 1345, 1349 (D.C.Cir.1995). Alabama Power suggests that federal enforcement of state regulations may mean that, if a state court voids the state air-pollution rule, federal officials still may enforce it. It also intimates that federal officials may enforce state rules more harshly than the state might have chosen to enforce them. Either of these predictions may be possible, but neither conjecture is so probable as to convince us that the delegation rules somehow affect the utilities petitioners in their current conduct to the extent that their "injury" may be deemed actual or imminent at this time. *See United Transportation Union v. ICC*, 891 F.2d 908, 911–13 (D.C.Cir.1989), *cert. denied*, 497 U.S. 1024, 110 S.Ct. 3271, 111 L.Ed.2d 781 (1990). *See also O'Shea*, 414 U.S. at 495–98, 94 S.Ct. at 676–77 (injury from bias of magistrate cannot be imminent because the bias could not harm petitioner unless he was arrested, tried, and convicted.)

Of the three sets of petitioners, then, CAIP comes closest to establishing justiciability. CAIP has presented a galaxy of likely circumstances in which its members could be trapped in the intolerable position of being unable to comply with new state standards that receive EPA approval under § 7412 shortly before some compliance deadline, thus leaving insufficient time for CAIP's members to respond accordingly. This statement of injury, unlike the multi-tiered conjectures of LEAN and of Alabama Power, may in fact approach a showing of injury sufficient for standing. In the end, however, we need not determine whether CAIP has shown constitutional standing, as CAIP's claim is assuredly prudentially unripe.

Although we would be reluctant to pretermit a jurisdictional question in order to reach a merits question, *see Cross-Sound Ferry Services, Inc. v. ICC*, 934 F.2d 327, 343–46 (D.C.Cir.1991) (Thomas, J., concurring), we have no difficulty dismissing a case based on one jurisdictional bar rather than another. *See, e.g., Mississippi Valley Gas Co. v. FERC*, 68 F.3d 503, 510 (D.C.Cir.1995) (rejecting a case on prudential ripeness rather than resolving a standing question); *News*

*America Pub., Inc. v. FCC,* 844 F.2d 800, 805 n. 10 (D.C.Cir.1988). Because issues of standing, ripeness, and other such "elements" of justiciability are each predicate to any review on the merits, a court need not identify all such elements that a complainant may have failed to show in a particular case. *See, e.g., Mississippi Valley Gas Co.,* 68 F.3d at 510; *Office of Com. of United Church of Christ,* 826 F.2d at 104 n. 2 (declining to decide whether a matter was constitutionally ripe because it was prudentially unripe). Moreover, as precedent and prudence counsel us to avoid unnecessary dicta, *see, e.g., Fried v. Hinson,* 78 F.3d 688, 692 (D.C.Cir. 1996), especially that on potentially difficult constitutional questions, *see Lyng v. Northwest Indian Cemetery Prot. Ass'n,* 485 U.S. 439, 445, 108 S.Ct. 1319, 1323, 99 L.Ed.2d 534 (1988) (citations omitted), we see substantial reason not to review each element of justiciability in a dispute that we ultimately conclude does not lie within our jurisdiction. With this in mind, we now turn to the only issue we must decide—whether CAIP has presented a ripe claim.

■ If a court confronts an institutional reason why it should not review a petitioner's claim at that time, the court should reject the claim as not ripe unless "postponing review .... impose[s] a hardship on the complaining party that is immediate, direct, and significant." *State Farm Mut. Auto. Ins. Co. v. Dole,* 802 F.2d 474, 479–80 (D.C.Cir.1986), *cert. denied sub nom. New York v. Dole,* 480 U.S. 951, 107 S.Ct. 1616, 94 L.Ed.2d 800 (1987). In this case, any injury demonstrated by CAIP presents the classic institutional reason to postpone review: we need to wait for "a rule to be applied [to see] what its effect will be." *Diamond Shamrock v. Costle,* 580 F.2d 670, 674 (D.C.Cir.1978); *see also Reno v. Catholic Social Servs., Inc.,* 509 U.S. 43, 56–59, 113 S.Ct. 2485, 2495–96, 125 L.Ed.2d 38 (1993) (noting that mere promulgation of an agency regulation does not make it ripe for challenge). Because we cannot ascertain or predict the specific practical problems that CAIP and its members might face or that might need remedy until the approval of some state's requirement or some other occurrence cements the applica-

tion and effect of the challenged delegation rules, we cannot review CAIP's claim now.

Nor is there any pressing concern that compels us to decide this matter at this time. CAIP's claim itself does not demand immediate relief because the primary injury it alleges "is not a present hardship resulting from the regulations themselves, but rather a future injury that may result" from programs that are approved under the regulations. *Cronin v. FAA,* 73 F.3d 1126, 1133 (D.C.Cir. 1996). Petitioner nonetheless argues that we must review its claim at this time because the judicial review provision of the Clean Air Act requires challenges to a rulemaking to be brought within 60 days of the rulemaking. *See* 42 U.S.C. § 7607(b). Though the inability of a petitioner to bring its claim at a later time would indeed pose a significant hardship, *see City of Houston v. HUD,* 24 F.3d 1421, 1432 n. 10 (D.C.Cir.1994), we do not believe that CAIP will be so barred.

■ We have held in other cases involving the confrontation between a statutory bar and a claim not yet prudentially ripe that a "time limitation on petitions for judicial review ... can run only against challenges ripe for review." *Baltimore Gas & Elec. Co. v. ICC,* 672 F.2d 146, 149 (D.C.Cir.1982); *see also Eagle–Picher,* 759 F.2d at 913–14. Our reading of 42 U.S.C. § 7607(b) does not contradict this precedent. The provision itself allows a petition to be brought after the initial time limit if that petition is "based solely on grounds arising after such sixtieth day," assuming that such petition is filed within sixty days of such new grounds arising. *See* 42 U.S.C. § 7607(b). If federal enforcement of state-adopted regulations provide the grounds necessary for proper judicial review in this type of case, then those grounds cannot have arisen until at least some problematic state regulation has received the EPA approval necessary for such federal enforcement. In this particular case, of course, CAIP has not demonstrated that any such event has occurred. Consequently, until its claim ripens, the statutory time bar has not begun to run.

## CONCLUSION

As a number of courts have observed, the threshold issues of constitutional standing and judicial prudence, though nominally distinct, often blur in practice. *See Flast v. Cohen,* 392 U.S. 83, 94–97, 88 S.Ct. 1942, 1949–51, 20 L.Ed.2d 947 (1968); *Winpisinger v. Watson,* 628 F.2d 133, 139–40 & n. 31 (D.C.Cir.), *cert. denied* 446 U.S. 929, 100 S.Ct. 1867, 64 L.Ed.2d 282 (1980). Such unclarity, however, rarely undermines the soundness of judicial results. Unless a party has demonstrated all the elements of a justiciable claim, no court need review it. Because none of these petitioners have established both standing and ripeness, none have demonstrated that we can and should review at this time the merits of their claims.