# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued November 9, 2009          Decided December 11, 2009

No. 08-1381

AMERICAN ROAD & TRANSPORTATION BUILDERS
ASSOCIATION,
PETITIONER

v.

ENVIRONMENTAL PROTECTION AGENCY AND LISA PEREZ
JACKSON, IN HER OFFICIAL CAPACITY,
RESPONDENTS

AND

ASSOCIATION OF AMERICAN RAILROADS, ET AL.,
INTERVENORS

———

On Petition for Review of an Order
of the Environmental Protection Agency

———

*Lawrence J. Joseph* argued the cause for petitioner. With him on the brief was *Nick Goldstein*.

*David Gunter*, Attorney, U.S. Department of Justice, argued the cause for respondent. With him on the brief were *John C. Cruden*, Acting Assistant Attorney General, and

*Michael Horowitz*, Attorney, U.S. Environmental Protection Agency.

*Kathleen A. Kenealy*, Deputy Attorney General, Attorney General's Office for the State of California, argued the cause for intervenors California Air Resources Board, et al. in support of respondent. With her on the brief were *Edmund G. Brown, Jr.*, Attorney General, *Mary E. Hackenbracht*, Senior Assistant Attorney General, *Kurt R. Wiese*, and *Barbara Baird*. *Aaron S. Colangelo* entered an appearance.

*Louis P. Warchot* and *Michael J. Rush* were on the brief for intervenor Association of American Railroads in support of respondent.

*Vickie L. Patton* and *Sean H. Donahue* were on the brief for *amici curiae* American Lung Association, et al. in support of respondent.

Before: GARLAND and KAVANAUGH, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: The American Road and Transportation Builders Association is a trade organization representing the "transportation construction industry"—companies that build roads, public transit systems, airports and the like. In 2002 ARTBA, as the group calls itself, petitioned the U.S. Environmental Protection Agency to amend two regulations implementing § 209(e) of the Clean Air Act (codified at 42 U.S.C. § 7543(e)). EPA had originally promulgated the provisions at issue—40 C.F.R. § 85.1603 and 40 C.F.R. pt. 89, subpt. A, App. A—in 1994, 59 Fed. Reg. 36,969, 36,986 (July 20, 1994); 59 Fed. Reg. 31,306, 31,339 (June 17, 1994), and then readopted them in 1997, 62 Fed.

Reg. 67,733, 67,736 (December 30, 1997). After a bit of litigation over the agency's failure to act on ARTBA's petition, EPA formally opened it to public comment in 2007, 72 Fed. Reg. 28,098, 28,209-10 (May 18, 2007), then rejected it in 2008, 73 Fed. Reg. 59,034, 59,130 (October 8, 2008). Shortly thereafter, ARTBA sought review in this court. We now dismiss that suit for lack of jurisdiction, on the grounds that *National Mining Association v. U.S. Department of the Interior*, 70 F.3d 1345 (D.C. Cir. 1995), requires us to treat ARTBA's petition to EPA as a challenge to the regulations it sought revised, and that judicial review of such a challenge is time-barred under Clean Air Act § 307(b)(1), 42 U.S.C. § 7607(b)(1).

\* \* \*

Clean Air Act § 209(e) prohibits states from imposing certain emissions-related regulations on various categories of engines and vehicles. ARTBA takes the position that EPA's rules interpreting § 209(e) have the effect of allowing states to adopt precisely the kinds of regulations that the statute forbids—partly because the rules are insufficiently comprehensive, and partly because some of their content is inconsistent with the statutory language. So, for example, ARTBA asked EPA to amend one of its regulations, 40 C.F.R. § 85.1603, to make clear that among the laws preempted are "fleet average standards," which prescribe emissions limits for an operator's suite of vehicles in the aggregate. See *Engine Mfrs. Ass'n v. South Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 249-50 (2004). The request that EPA revise 40 C.F.R. pt. 89, subpt. A, App. A, by contrast, reflected ARTBA's view that that provision affirmatively deems permissible state regulations that the statute, properly construed, prohibits. In response to ARTBA's petition, EPA offered a lengthy analysis disputing that further specificity was warranted where

ARTBA sought it, and defending the interpretations that ARTBA argued were wrong.

In opposition to the present action, the agency suggests two reasons why our jurisdiction does not extend to ARTBA's suit. One is the time-bar issue mentioned above; the other is a contention that ARTBA cannot establish constitutional standing.

Article III of the Constitution requires ARTBA, of course, to allege an injury that is fairly traceable to the agency's conduct and redressable by this court. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). In EPA's view, ARTBA has failed to do so with respect to each of the numerous putative harms it identifies, including among others injuries arising from state air quality remediation plans requiring EPA's approval. See Clean Air Act § 110(a)(2)(E)(i), 42 U.S.C. § 7410(a)(2)(E)(i). This court's decision in *Louisiana Environmental Action Network v. Browner*, 87 F.3d 1379 (D.C. Cir. 1996) ("*LEAN*"), the government claims, "squarely defeats ARTBA's standing argument" to the extent it hinges on injury attributable to "any state regulation that EPA must approve." Respondent's Br. at 29.

The government drastically overreads *LEAN*. There several petitioners challenged an EPA rule establishing procedures for deciding whether to approve state implementation plans under the Clean Air Act. 87 F.3d at 1381. One complaint was that the rules might allow EPA to approve a state regulation, and enforce it as a federal one, even though it was more stringent than any regulation the EPA could have implemented on its own. *Id*. at 1383-84. The party seeking relief, however, "identified no state—never mind a state in which one of the [relevant] petitioners operates—that has adopted any more stringent rule which is or

is about to be federalized by the EPA." *Id*. at 1384. Regarding the harms alleged as "hypothetical," we found a want of standing. *Id*.

Thus *LEAN* is simply an application of the conventional understanding that highly speculative concerns do not satisfy Article III's injury-in-fact requirement; it is *not* a holding that the injuries threatened by EPA rules governing future assessment of proposed state implementation plans are per se unduly remote. The canonical "actual or imminent" threat of injury remains, of course, perfectly sufficient for standing purposes. See *Lujan*, 504 U.S. at 560; *Summers v. Earth Island Inst*., 129 S.Ct. 1142, 1149 (2009).

ARTBA, for its part, has pointed to no fewer than four state regulatory regimes that, it alleges, *currently* subject its members to burdensome laws that are not permitted under the Clean Air Act, and that either have been approved by EPA or are to be submitted for its approval. Petitioner's Br. at 26-27. If the federal rules ARTBA sought to have revised really do allow such state regulations, then the harms ARTBA members are currently suffering as a result of already-approved state plans—and would plausibly suffer as a result of future EPA approvals—are sufficiently attributable to those federal rules to satisfy the "fairly traceable" prong of the standing inquiry. See *Animal Legal Defense Fund, Inc. v. Glickman*, 154 F.3d 426, 438-43 (D.C. Cir. 1998) (en banc). And in the event that we agreed with ARTBA's substantive views, we could order EPA to reconsider its decision to stand pat on its existing rules. This is the remedy we typically afford meritorious petitions seeking review of agency decisions not to initiate rulemakings, and we have obviously never regarded such relief too speculative to satisfy constitutional standing requirements. See, e.g., *Massachusetts v. EPA*, 549 U.S. 497, 534-35 (2007); *American Horse Protection Ass'n v. Lyng*,

812 F.2d 1, 7 (D.C. Cir. 1987). Standing, in short, is not ARTBA's problem.

\* \* \*

What dooms the organization's petition in this forum instead is subject matter jurisdiction. The section of the Clean Air Act that simultaneously authorizes and limits judicial review of EPA activity provides in relevant part:

> A petition for review of . . . any . . . nationally applicable regulations promulgated, or final action taken, by the Administrator under this chapter may be filed only in the United States Court of Appeals for the District of Columbia. . . . Any petition for review under this subsection shall be filed within sixty days from the date notice of such promulgation . . . or action appears in the Federal Register, except that if such petition is based solely on grounds arising after such sixtieth day, then any petition for review under this subsection shall be filed within sixty days after such grounds arise.

Clean Air Act § 307(b)(1), 42 U.S.C. § 7607(b)(1). ARTBA filed suit in this court within 60 days of EPA's decision rejecting the organization's petition for rules amendments. The question is whether that agency action opened a new filing window—or if instead we are obliged to treat a petition to revise regulations as a challenge to their *promulgation*, with the result that the relevant chronological analysis runs from that earlier date.

The general rule is that it is a perfectly valid "method of obtaining judicial review of agency regulations once the limitations period has run . . . to petition the agency for amendment or rescission of the regulations and then to appeal the agency's decision." *NLRB Union v. FLRA*, 834 F.2d 191,

196 (D.C. Cir. 1987). One twist is that not all types of petitions for rulemakings are treated equally. If the request for new rules is predicated on an alleged *procedural* defect in the promulgation of the existing rules, then we view the petition as a direct challenge to the original enactment—which will be time-barred if it falls outside the period in which judicial review of the promulgation is permitted. *Id.*; *Natural Resources Defense Council v. NRC*, 666 F.2d 595, 602 (D.C. Cir. 1981). On the other hand, agency denial of a petition for a new rulemaking which complains of *substantive* infirmities in existing rules *is*, for the most part, judicially reviewable irrespective of time limits dating from the rules' enactment. *Professional Drivers Council v. Bureau of Motor Carrier Safety*, 706 F.2d 1216, 1217-18, n.2 (D.C. Cir. 1983) ("This court has scrutinized regulations immune from direct review by reviewing the denial of a subsequent rulemaking petition which challenged the regulation on demonstrable grounds of *substantive* invalidity.") (emphasis in original, internal quotation marks omitted); *NLRB Union*, 834 F.2d at 196 ("[A] petitioner's contention that a regulation should be amended or rescinded because it *conflicts with the statute* from which its authority derives is reviewable outside of a statutory limitations period.") (emphasis in original); *Functional Music, Inc. v. FCC*, 274 F.2d 543, 546 (D.C. Cir. 1958).

We have subjected that general rule, however, to an exception. *National Mining Association* identified a circumstance in which an agency's denial of a revision-seeking petition does not allow review of alleged substantive defects in the original rule, even under the deferential standards applicable to review of such denials, outside the statutory limitations period running from the rules' original promulgation: the case in which Congress has "specifically address[ed] the consequences of failure to bring a challenge within the statutory period." 70 F.3d at 1350. We

characterized the statutes at issue in *NLRB Union*, *Functional Music*, and similar cases as "not explicitly say[ing]" that "Congress meant totally to foreclose review after the statutory period." *Id.* If Congress "directly focused on the issue," however, a different outcome results: judicial review of a petition to repeal or revise rules is time-barred, except to the extent that the statute allows review based on later-arising grounds. *Id.*

Specifically, *National Mining Association* held that the following language—in that case from the Surface Mining Control and Reclamation Act—amounted to an explicit decision to preclude review of repeal- or revision-seeking petitions filed outside the statutory deadlines:

> A petition for review of any action subject to judicial review under this subsection shall be filed in the appropriate Court within sixty days from the date of such action, or after such date if the petition is based solely on grounds arising after the sixtieth day.

*Id.* (emphasis omitted). We noted, moreover, that "Congress has adopted similar limitations on judicial review in other environmental statutes," citing among others our own limitation here, Clean Air Act § 307(b)(1). *Id.* at n.2. *National Mining* did not, so far as we can discern, suggest that such language implied any sort of limitation on the recognized ability of a party against whom a regulation is enforced to contest its validity in the enforcement context. See, e.g., *NLRB Union*, 834 F.2d at 195-96.

We cannot make out any material distinction—at any rate any distinction helpful to petitioner—between the statutory language at issue in *National Mining Association* and the statutory language at issue here. Section § 307(b)(1) in fact imposes one additional constraint on petitions brought outside

the original 60-day window based on after-arising grounds: they must be filed within 60 days of the new event, rather than any time after it. *National Mining Association* therefore compels the conclusion that ARTBA's 2008 petition for judicial review is time-barred for falling outside the 60-day period that § 307(b)(1) provided for court challenges to the 1997 re-promulgation of 40 C.F.R. § 85.1603 and 40 C.F.R. pt. 89, subpt. A, App. A—at least insofar as the petition raises points that could have been brought to our attention in 1997. See 70 F.3d at 1350, 1352.

ARTBA offers two reasons why, in its view, we have jurisdiction in any event. First is the argument that the limitations period in § 307(b)(1) can run only against ripe challenges. Since ARTBA had no ripe claim when EPA re-promulgated the rules, the suggestion goes, the organization is permitted to attack them now. This line of reasoning implicates two procedural questions: *when* freshly ripened claims may be raised under § 307(b)(1); and *where* they should be filed.

We answered the first of these in *LEAN*. While we agreed with petitioner that § 307(b)(1)'s provision for judicial review after the initial filing period for suits based on newly arising grounds encompassed the occurrence of an event that ripens a claim, 87 F.3d at 1385, we noted the section's explicit requirement that a petition predicated on any such new event be filed within 60 days of the event. *Id.*

The question where, precisely, a party is supposed to file such a claim matters, among other reasons, because it determines which filing of ARTBA's is the one that must have come within 60 days of some after-arising ground—the 2002 petition to EPA, or the 2008 petition to this court. The answer is less straightforward than it may appear. Our cases on the matter start with *Oljato Chapter of the Navajo Tribe v.*

*Train*, 515 F.2d 654, 666 (D.C. Cir. 1975), where we said that it was "within our inherent powers to enforce our interest in informed decision-making by requiring presentation to the Administrator of any new information thought to justify revision of a standard . . . reviewable under Section 307." Of course the *ripening* of a petitioner's claim is hardly the sort of novelty that seems to require special agency reaction. Later we raised the ante by characterizing this rule as jurisdictional, *The Group Against Smog and Pollution, Inc. v. EPA*, 665 F.2d 1284, 1290 n.45 (D.C. Cir. 1981), see also *Natural Resources Defense Council, Inc. v. Thomas*, 845 F.2d 1088, 1091-92 (D.C. Cir. 1988), but those cases, like *Oljato*, involved claims that new information called for a rule change—not that a potential claim had become newly justiciable.

As it happens, ARTBA cites no event (other than EPA's decision rejecting its petition, which *National Mining Association* says doesn't count) that would bring either filing within any newly opened 60-day window. ARTBA makes some reference, albeit in the context of discussing a different matter, to a 2001 Texas law imposing diesel emission limits that ARTBA says is in fact preempted by § 209(e) and that "imposes additional costs and regulatory burdens on ARTBA's members," Petitioner's Br. at 26—but that law took effect well over 60 days before the organization's July 12, 2002 petition to EPA. Another event that ARTBA sees as significant is EPA's 1998 rulemaking concerning the scope of federal preemption of state regulations of new locomotive engines, which was also obviously too remote in time. Finally, ARTBA now seeks to make hay of a 2004 Supreme Court decision and a 2004 statutory amendment—neither of which can render its 2002 petition or its 2008 appeal "filed within sixty days after such grounds arise." See § 307(b)(1). Because we find that none of these events satisfies the 60-day criterion in § 307(b)(1) for challenges based on after-arising grounds, we need not determine where ARTBA should have

filed in order to invoke § 307(b)(1)'s provision for after-arising grounds, nor whether ARTBA's petition met the additional requirement that it be "based solely" on those grounds.

ARTBA next argues that an EPA rulemaking in 2007-08 effectively reopened the regulations now at issue to judicial review. See *National Ass'n of Reversionary Prop. Owners v. Surface Transp. Bd.*, 158 F.3d 135, 141 (D.C. Cir. 1998) ("*NARPO*") (describing the "reopening doctrine"). It does not rest on the fact that EPA responded to its arguments. We rarely if ever find such a response sufficient; if a party were allowed to "goad an agency into a reply, and then sue on the grounds that the agency . . . re-opened the issue," *Am. Iron & Steel Inst. v. EPA*, 886 F.2d 390, 398 (D.C. Cir. 1989), the agency's thorough answer would put it at risk of "reopening," while a taciturn response would put it at risk of being faulted for acting without reasoned decisionmaking. See *National Min. Ass'n*, 70 F.3d at 1351. Rather, ARTBA contends that in the course of the separate rulemaking the agency conducted simultaneously with the publication and rejection of ARTBA's petition, EPA effectively reconsidered the totality of its § 209(e) regulatory framework.

What EPA in fact did in its rulemaking notice was to describe the existing statutory regime, identify the regulations that implement it, and lay out several discrete potential amendments, abjuring any intent to introduce substantive changes except in two designated realms:

> We are proposing to create a new part 1074 that would describe the federal preemption of state and local emission requirements. This is being done as part of EPA's ongoing effort to write its regulations in plain language format in subchapter U of title 40 of the CFR. The proposed regulations are based directly on the

existing regulations in 40 CFR part 85, subpart Q. *With the exception of the simplification of the language and specific changes described in this section, we are not changing the meaning of these regulations.*

72 Fed. Reg. at 28,209/2-3 (emphasis added). The "specific changes" the agency referenced consisted of two new regulations, both implementing recent legislation preempting states other than California from imposing certain emissions-related rules on a new class of small engines. *Id.* In the final rule announcement, EPA carried out its proposal, repeating the language quoted above more or less verbatim. 73 Fed. Reg. at 59,130/1. Consistent with its asserted intention to rewrite the relevant regulations in plain language without changing their meaning, EPA also republished its § 209(e) rules in full. *Id.* at 59,380.

Considering "the entire context of the rulemaking," *NARPO*, 158 F.3d at 141, we conclude that EPA did not reopen consideration of the regulations ARTBA asked it to revise. Seemingly on ARTBA's side are *Ohio v. EPA*, 838 F.2d 1325, 1328 (D.C. Cir. 1988), and *Montana v. Clark*, 749 F.2d 740, 744 (D.C. Cir. 1984), cases in which the agency included the pre-existing regulation in a Notice of Proposed Rulemaking and responded to comments on provisions later alleged to have been reopened; in both cases we found a reopening. But here, as in *National Mining Association*, any such responses were in answer to comments received pursuant to the publication of *petitioner*'s own call for revisions, which, as we said in *National Mining*, "is not, without much more, sufficient to trigger the reopener doctrine." 70 F.3d at 1352. Though addressing feedback from ARTBA and others, the agency gave no "indication that [it] had undertaken a serious, substantive reconsideration" of the rules in question. See *id.* In fact, EPA went further, saying explicitly in its Notice of Proposed Rulemaking that it was "not proposing to adopt the

. . . changes requested by ARTBA in its petition." 72 Fed. Reg. at 28,209/3. As had the agency in *National Mining*, EPA appears merely to have sought comments on the premise that they might have persuaded it to actually reopen the matter. See 70 F.3d at 1351.

Finally, ARTBA identifies one further piece of evidence indicating that EPA reconsidered the relevant regulations. In 2006, the organization filed suit alleging that EPA was unreasonably delaying action on ARTBA's 2002 petition. See *Am. Rd. & Transp. Builders Ass'n v. EPA*, No. 06-1112 (D.C. Cir., Oct. 5, 2007). In the course of that litigation, EPA argued that the case was moot since the agency had "'commenced a rulemaking on the issues ARTBA raised.'" See Reply Br. at 7 (quoting No. 06-1112, Resp. Mot. to Dismiss at 3). In ARTBA's view, this language amounts to a concession by EPA that it was reopening the rules ARTBA challenged. But even a cursory glance at the phrase, in its original context, reveals that EPA was simply referring to its publication of ARTBA's petition, rather than stipulating for the purpose of that case and this one that the agency was revisiting the rules to the extent necessary to reopen them to judicial review. See *National Min. Ass'n*, 70 F.3d at 1351 ("The decision to publish a petition for rule-making . . . is not evidence of a reexamination of the policy at issue in the petition.").

We conclude that we are without jurisdiction to hear this petition. Accordingly, the case is

*Dismissed.*