**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-2360**

HOWARD COUNTY, MARYLAND,

        Petitioner,

      v.

FEDERAL AVIATION ADMINISTRATION; STEPHEN DICKSON, Administrator, Federal Aviation Administration,

        Respondents.

On Petition for Review of Orders of the Federal Aviation Administration.

Submitted: March 26, 2020                Decided: August 11, 2020

Before MOTZ, DIAZ, and RUSHING, Circuit Judges.

Petition dismissed by published opinion. Judge Diaz wrote the opinion, in which Judge Motz and Judge Rushing joined.

Gary W. Kuc, County Solicitor, Lewis J. Taylor, Senior Assistant County Solicitor, Melissa E. Goldmeier, Assistant County Solicitor, HOWARD COUNTY OFFICE OF LAW, Ellicott City, Maryland, for Petitioner. Jeffrey Bossert Clark, Assistant Attorney General, Eric Grant, Deputy Assistant Attorney General, J. David Gunter II, Environment and Natural Resources Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; John E. Doyle, Anne Christenson, Lane N. McFadden, FEDERAL AVIATION ADMINISTRATION, Bloomington, Indiana, for Respondent.

DIAZ, Circuit Judge:

In February 2016, the Federal Aviation Administration ("FAA") modified an air-traffic procedure, or series of flight routes, that governs westbound departing aircraft at Baltimore/Washington International Thurgood Marshall Airport ("BWI"). The modified procedure, called "TERPZ-6," directs westbound aircraft to depart over historic areas of Howard County, Maryland that had previously endured little air traffic, and at altitudes below 3,000 feet, bringing with them allegedly insufferable levels of noise.

In November 2018, the County brought this petition to vacate or set aside the TERPZ-6 departure procedure on the ground that the FAA failed to comply with a constellation of environmental statutes and regulations when assessing its likely noise impacts. But the FAA contends that the petition is untimely under 49 U.S.C. § 46110(a) because it was filed well over sixty days after the issuance of the agency's relevant order, and the County fails to show reasonable grounds for not filing on time. We agree, finding that the County unreasonably waited 110 days to demand voluntary relief from the FAA as a first resort, and six months for the agency to come to the table.

We therefore dismiss the petition.

I.

We begin with an overview of the FAA's implementation of TERPZ-6 and the thirty-three-month aftermath leading to this lawsuit.

2

A.

Pursuant to the Federal Aviation Act of 1958, 49 U.S.C. § 40101 *et seq.*, the FAA is authorized to prescribe regulations "for the [safe and efficient] use of the navigable airspace," *id.* § 40103(b)(1). Such regulations naturally include "air traffic regulations" (comprising arrival, departure, and en route procedures), which govern the path and altitude of aircraft moving through the navigable airspace. *Id.* § 40103(b)(2).

For many years, the FAA used "conventional" air-traffic procedures that relied on ground-based navigation aids and verbal instructions (called "vectors") radioed in from an air-traffic controller. But that began to change in the early 2000s, when, as air travel was booming and new technologies were precipitating, the FAA introduced so-called "area navigation" procedures, or "RNAV" for short. Unlike the conventional variety, RNAV procedures are entered directly into an aircraft's on-board flight management (i.e., computer) system, using satellite technology to navigate the aircraft from point A to B. Because flight operations are thus significantly more automated than before, RNAV procedures tend to boast greater efficiency, precision, and safety.

Seeking to encourage the transition away from conventional air-traffic procedures, Congress in 2012 enacted legislation directing the FAA "to modernize the nation's air-traffic control system." *City of Phoenix v. Huerta*, 869 F.3d 963, 966 (D.C. Cir. 2017), *opinion amended on reh'g*, 881 F.3d 932 (D.C. Cir. 2018); *see* FAA Modernization and Reform Act of 2012, Pub. L. No. 112-95, §§ 101(a), 213(a)(1)(A), 126 Stat. 11, 15, 46–47 (2012). Among other so-called "Next Generation" or "NextGen" technologies that the legislation promotes, it directs the FAA to make greater use of RNAV and other such

3

"performance-based navigation procedures" at the nation's thirty-five busiest airports. *See* Pub. L. No 112-95, § 213, 126 Stat. at 46–50. The FAA's ongoing and nationwide initiative to implement the legislation is likewise called "NextGen."

"Spurred by this new legislation," in 2013, the FAA developed a package of forty-one new and modified air-traffic procedures, nicknamed the "D.C. Metroplex," to guide arriving and departing aircraft at the three major airports in the Washington, D.C. area. *Citizens Ass'n of Georgetown v. Fed. Aviation Admin.*, 896 F.3d 425, 429 (D.C. Cir. 2018). Those airports include BWI, the busiest in the D.C. area, which is owned and operated by the Maryland Aviation Administration ("MAA") and located nine miles south of downtown Baltimore, in an unincorporated area of Anne Arundel county.

In developing the D.C. Metroplex procedures, the FAA was obliged to comply with "a constellation of statutory and regulatory schemes designed to ensure that federal agencies properly account" for the environmental impact of their decisions, including with respect to noise levels. *Id.* At the center of that constellation lies the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.*, which requires federal agencies to prepare an environmental impact statement for all major actions "significantly affecting the quality of the human environment," *id.* § 4332(C). If an agency is unsure whether a proposed action will cause a *significant* environmental impact, however, regulations promulgated by the Council on Environmental Quality, *see* 40 C.F.R. § 1500.1 *et seq.* (which the Supreme Court has held "are entitled to substantial deference," *Marsh v. Oregon Nat. Res. Council*, 490 U.S. 360, 372 (1989)), allow the agency to prepare an environmental assessment to determine whether a formal environmental impact statement is necessary,

4

*see id.* § 1508.9(a)). If, following that environmental assessment, the agency concludes that the proposed action will not have a significant environmental impact, it may simply issue a finding to that effect, briefly explaining the reasons behind that conclusion, without preparing an environmental impact statement. *Id.* § 1508.13.

Uncertain whether the D.C. Metroplex would have a significant impact, the FAA initiated its environmental review in December 2012 by distributing a notice of intent to prepare a draft environmental assessment. The FAA issued the draft for comments in June 2013. The FAA then completed a final environmental assessment in November, which concluded that the proposed air-traffic procedures would "not have significant environmental impacts," S.J.A. 2918, including and especially "significant noise impacts," S.J.A. 2925; *cf.* FAA, Order 1050.1E, Environmental Impacts: Policies and Procedures, Appendix A (June 8, 2004) (setting forth the then-applicable criteria and procedures to be used in the agency's environmental impact analysis). Finally, in December, the FAA issued a finding of no significant impact and corresponding record of decision explaining its conclusion and exempting the D.C. Metroplex procedures from further environmental review. *See* FAA, Finding of No Significant Impact and Record of Decision and Agency Concurrence Letters, Public Comment Letters and Responses to Comments, and Environmental Assessment Errata for the Washington D.C. Optimization of the Airspace and Procedures in the Metroplex (DC OAPM) (Dec. 2013) (the "Record of Decision").

Among the procedures approved in the Record of Decision was the fourth generation of the TERPZ line of departure procedures at issue here, called TERPZ-4, which went into effect at BWI on March 5, 2015. The fourth generation procedure directed

5

aircraft departing from BWI's primary westbound runway to head out from the airport in a roughly due west orientation, before splitting off onto other routes depending on their destination. As a result, westbound departing aircraft largely stayed out of the airspace of Howard County, which spreads out further to the northwest of BWI, especially with respect to its more historic (and thus environmentally sensitive) residential areas. The next month, on April 30, 2015, the FAA republished the departure procedure under the name TERPZ-5, adding a single notation to the graphic depiction given to pilots while keeping the substantive flight routes identical to TERPZ-4.

Seeking to further maximize the capacity of the airspace surrounding BWI, in fall 2015 the FAA sought to further modify the TERPZ departure procedure (among a few others) to enable aircraft to depart more rapidly. Because these modifications would apply to currently approved air-traffic procedures, FAA regulations authorized the agency to forego a new environmental assessment and, instead, simply assess whether the proposed *changes* would significantly impact the environment. *See* FAA, Order 1050.1F, Environmental Impacts: Policies & Procedures, ¶¶ 9-1–9-2 (July 16, 2015). After modeling their likely noise impacts, on October 8, 2015 the FAA concluded that the modified procedures would not have a significant environmental impact and, as such, categorically exempted them from further environmental review pursuant to Order 1050.1F. *See id.* ¶ 5-6.5(i).

Meanwhile, MAA officials were growing concerned about noise impacts associated with the departure procedures approved under the D.C. Metroplex and implemented earlier in 2015. The MAA sent a letter to the FAA about these concerns on October 22, 2015,

stating that it had recently become aware of the noise impacts through a combination of attending local neighborhood association meetings and its own review of the departure procedures implemented since March 2015. The MAA asserted that the final environmental assessment for the D.C. Metroplex hadn't sufficiently accounted for the noise impacts of these procedures, such that the Record of Decision "was improperly issued and not representative of the actual implementation." J.A. 1197. When the FAA didn't promptly respond, the MAA lobbied three of Maryland's then U.S. Representatives, who sent the FAA a similarly worded letter on November 13, 2015.

Without responding to either letter, on December 1, 2015, the FAA's D.C. Metroplex team briefed certain BWI authorities about the modifications that it had approved to TERPZ-5 and a few other departure procedures back in October. The FAA officials stated that the modifications were "minor" and meant to address "some concerns" that had come to light since March. J.A. 995. It's unclear whether those concerns included the noise impacts highlighted in the MAA's and Representatives' recent letters.

The TERPZ-6 departure procedure took effect on February 4, 2016, on which date the FAA published its administrative order with respect to the modified procedure. Among sixteen substantive flight-path changes, TERPZ-6 pushed westbound departing aircraft further to the northwest and thus nearer to historic residential areas of Howard County. And especially because the aircraft depart over the County at altitudes below 3,000 feet, many residents of these (and other) areas say that they have experienced insufferable levels of overhead noise, from early in the morning until late at night, ever since.

7

Only after rolling out TERPZ-6 did the FAA finally respond, on March 9, 2016, to the MAA's letter of October 22, 2015. The FAA's letter asserted that the noise impacts associated with the subject D.C. Metroplex procedures had been sufficiently accounted for in the Record of Decision, and that MAA officials had been involved in the environmental review process. The letter also attributed the noise impacts to a construction project that the FAA had completed in December, as well as to certain aspects of the TERPZ-5 procedure that it claimed had been remedied by the recent implementation of TERPZ-6.

The MAA replied to the FAA's letter on April 25, 2016, asserting that the MAA's concerns about noise impacts had nothing to do with construction and that TERPZ-6 did little to mitigate them. The MAA reiterated its belief that the noise impacts of the departure procedures had been insufficiently vetted and that they violated long-established noise abatement protocols. By way of relief, the MAA requested that the FAA "restore" the departure procedures formerly in place. When the FAA again failed to promptly respond, the MAA sought help from Maryland's then U.S. Senators, who sent the FAA a letter echoing the MAA's concerns on May 19, 2016.

Howard County finally got involved on May 24, 2016 (110 days after the TERPZ-6 procedure had gone into effect), when three of its elected officials sent the FAA a letter of their own. The letter represented the officials as "part of a coordinated effort" to engage the FAA about "unacceptable noise levels from flights departing from and arriving at BWI" as a result of "the implementation of NextGen," which their "state and federal elected counterparts" had been carrying on, "to no avail," for "nearly a year." J.A. 1210. Without

identifying TERPZ-6 or any other specific NextGen procedure, the officials expressed frustration with the FAA's apparent inattention to the "significant disruption" caused by the noise impacts, J.A. 1210, and requested "immediate action" in the form of a meeting in early June, J.A. 1211. The FAA didn't follow up about this request.

In fact, it was not until August that the FAA responded to the concerns from the various federal, state, and local officials about noise impacts associated with the implementation of NextGen at BWI. That was a month after the FAA received a second letter from Maryland's then U.S. Senators, this time stamped "URGENT," expressing "grave concerns" about the noise impacts "visited upon many Maryland communities since NextGen was implemented," as well as the FAA's apparent "unwillingness to take [them] seriously." J.A. 1317. The Senators demanded that the FAA "immediately review and respond to" the MAA's request to restore the previous procedures. *Id.*

The FAA at last held an initial conference call with the MAA on August 18, 2016, followed by another on August 30. The agencies then met on September 12 to discuss the noise impacts associated with a variety of NextGen departure procedures in effect at BWI. After that, the agencies co-sponsored a "Community Outreach Open House" on October 27, J.A. 1327, which was attended by nearly 500 residents of the communities surrounding BWI, who submitted over 200 comment forms voicing their frustration with the noise brought by westbound departing aircraft. The open house prompted the FAA to formally contemplate replacing TERPZ-6 and the other departure procedures responsible for the noise impacts, which it hoped it could accomplish within two years.

On December 12, 2016, the FAA wrote to Maryland's then U.S. Senators about its recent meetings with the MAA and the community and its willingness to pursue appropriate amendments. But since the noise impacts affected several interrelated procedures and communities, and since aircraft noise could only be "relocated" to another part of the "densely populated" region of our nation's capital, the FAA proposed to establish a community roundtable to help identify solutions representing a consensus view. *See Maryland v. Fed. Aviation Admin.*, 952 F.3d 288, 289 (D.C. Cir. 2020) (discussing a similar proposal in response to similar noise problems at Ronald Reagan Washington National Airport). The Senators approved, and the so-called "D.C. Metroplex BWI Community Roundtable" was swiftly established. Among other government officials, the FAA invited two representatives from Howard County to participate.

From March 2017 until July 2018, the BWI Roundtable met every month except for one. The meetings largely reflected a tug-of-war between the collective members of the BWI community, who wanted the FAA to revert wholesale to the departure procedures in place "prior to [the] implementation of NextGen," J.A. 1364, and the FAA, which insisted that such reversion was impossible because Congress, after all, had commanded it to implement NextGen, whose policy objectives couldn't be accomplished by using the old procedures. Slowly but surely, the FAA advanced its more modest agenda of amending the problematic NextGen procedures so as to abate the noise impacts, and ultimately presented proposals to that effect at the BWI Roundtable's meeting of April 24, 2018. In response, the community reluctantly tasked the MAA with providing a recommendation.

10

In lieu of providing a recommendation on the FAA's proposed amendments, on June 26, 2018, the State of Maryland sent the FAA a document that it characterized as an "administrative petition for supplemental environmental assessment and revisions to area navigation routes and procedures serving the [BWI] airport." J.A. 2108. The State's administrative petition asserted that the BWI Roundtable had failed to yield any "concrete action" to reduce the noise impacts associated with the implementation of the D.C. Metroplex at BWI and requested that the FAA prepare a supplemental environmental assessment "in light of [these] unanticipated and undisclosed impacts." J.A. 2109.[1]

Sensing that the FAA's proposed amendments wouldn't achieve the relief it sought, Howard County sent the FAA its own self-styled "Administrative Petition for Action" on July 18, 2018. J.A. 2123. Still without identifying the TERPZ-6 procedure by name, the County's administrative petition asserted that the FAA's "New Routes" were arbitrary and capricious and requested the agency to "immediately suspend[]" their use and revert to its "historical[]" departure paths. J.A. 2137. The County also requested a written response from the FAA by August 20, 2018, but didn't receive one until September 18, 2018, in the

---

[1] The State of Maryland also sued the FAA in the D.C. Circuit on June 26, 2018, though that case, as noted, involved NextGen procedures at Ronald Reagan Washington National Airport rather than BWI. *See Maryland*, 952 F.3d at 289 (dismissing the petition as untimely). With respect to the procedures at BWI, the State ultimately filed a separate petition in November, after the FAA rejected its administrative petition. *See Maryland v. Dickson*, No. 18-1302 (D.C. Cir. filed Nov. 8, 2018). The D.C. Circuit has since held that case in abeyance pending the FAA's voluntary reconsideration of the State's requests.

form of a dismissive one-page letter. The County filed this petition for judicial review thereafter, on November 13, 2018, asserting injuries on behalf of itself and its residents.[2]

## II.

Howard County asks us to vacate or set aside the TERPZ-6 departure procedure as arbitrary and capricious "or otherwise not in accordance with law" under the Administrative Procedure Act ("APA"), *see* 5 U.S.C. § 706(2)(A), on the ground that the FAA failed to properly assess the procedure's likely environmental impacts, especially with respect to noise. The County also argues that TERPZ-6 is a substantive rule that was required to undergo notice-and-comment procedures under the APA, *see id.* § 553.

As an initial matter, however, we "must first determine" whether the County's petition for review is timely under 49 U.S.C. § 46110(a). *See City of Phoenix*, 869 F.3d at 968. The FAA argues that the petition isn't timely because it was filed well over sixty days after the issuance of its order implementing the TERPZ-6 procedure, and the County's failure to file within sixty days isn't excused. We agree.

---

[2] Shortly after this case was submitted on the briefs, the FAA filed a letter stating that, on March 26, 2020, the agency published a clerical amendment to the TERPZ procedure, called TERPZ-7, introducing several notational changes to TERPZ-6. The FAA also stated its view, with which we agree, that the issuance of TERPZ-7 doesn't affect the legal issues in this case because the amended procedure continues to rely on the same flight routes established in TERPZ-6.

The County didn't respond to the FAA's filing, but did file a fresh petition for judicial review of TERPZ-7 in this court shortly thereafter. *See Howard Cty. v. Fed. Aviation Admin.*, No. 20-1585 (4th Cir. filed May 26, 2020). We have since granted the parties' joint motion to hold that case in abeyance pending our decision here. In so proceeding, we express no opinion on the County's new petition.

As we recently observed in an unrelated case between these parties, a person disclosing "a substantial interest" in an order by the FAA may file a petition for review thereof in an appropriate federal circuit court under 49 U.S.C. § 46110(a). *Howard Cty. v. Fed. Aviation Admin.*, --- F. App'x ----, No. 19-1062, 2020 WL 3571784, at *2 (4th Cir. July 1, 2020) (per curiam) (cleaned up). But such petitions "must be filed not later than 60 days after the order is issued." 49 U.S.C. § 46110(a). If more than sixty days have passed since the issuance of the FAA's relevant order, the petition may be taken up "only if there are reasonable grounds for not filing by the 60th day." *Id.*; *accord Citizens Ass'n of Georgetown*, 896 F.3d at 427 ("Federal law requires that petitions seeking review of FAA actions be filed within sixty days of the agency's final order unless the petitioner had reasonable grounds for delay." (quoting 49 U.S.C. § 46110(a)).

Accordingly, the first step in our timeliness inquiry is to determine when the FAA's relevant order issued. *Howard Cty.*, 2020 WL 3571784, at *2. If the County's petition wasn't filed within sixty days thereof, we must then consider whether the County had "reasonable grounds" for delay. *Id.* We take these steps in turn.

A.

The first step requires us to identify the FAA's relevant order as well as the date on which it issued. Like the D.C. Circuit, we understand § 46110(a)'s reference to an FAA "order" to refer to a *final* order within the meaning of the APA, *see City of Phoenix*, 869 F.3d at 968; *Citizens Ass'n of Georgetown*, 896 F.3d at 431, which provides that only "final agency action" is "subject to judicial review," *see* 5 U.S.C. § 704; *cf. id.* § 551(6) (defining an "order" as an agency's "final disposition . . . in a matter other than rule making"). The

13

Supreme Court has held that "two conditions must be satisfied" for agency action to be "final" within the meaning of 5 U.S.C. § 704. *Bennett v. Spear*, 520 U.S. 154, 177 (1997). "First, the action must mark the consummation of the agency's decisionmaking process." *Id.* at 177–78 (cleaned up). "And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Id.* at 178 (cleaned up).

As for the term "issue" under § 46110(a), we find persuasive our prior (unpublished) interpretation thereof to mean "the act of publishing or officially giving out or making available." *See Skydive Myrtle Beach Inc. v. Horry Cty. Dep't of Airports*, 735 F. App'x 810, 813 (4th Cir. 2018) (per curiam) (quoting *Issue*, Merriam-Webster's Collegiate Dictionary (10th ed. 1999)). Our sister circuits have understood this term in the same way. *See, e.g.*, *Avia Dynamics, Inc. v. Fed. Aviation Admin.*, 641 F.3d 515, 519 (D.C. Cir. 2011); *Fla. Manufactured Hous. Ass'n, Inc. v. Cisneros*, 53 F.3d 1565, 1574 (11th Cir. 1995). Thus, if the "order" is the final action by which the FAA consummates a decisionmaking process and determines rights, obligations, or legal consequences, that order "issues" when the FAA publishes or otherwise officially makes it available to interested persons.

As applied here, we find that the only challenged FAA action that constitutes a final order issued on February 4, 2016, when TERPZ-6 was simultaneously "published and put into effect." *See City of Phoenix*, 869 F.3d at 969 (drawing the same conclusion with respect to similar air-traffic procedures at Phoenix Sky Harbor International Airport).

By putting TERPZ-6 into effect at BWI, the order published on that day "satisfies both prongs of the finality test." *See id.* First, the order consummated the FAA's

14

decisionmaking process concerning how to modify the previous departure procedure (TERPZ-5) for westbound aircraft at BWI, which began in fall 2015 and involved "extensive testing and evaluation" before the modifications were finalized. *See id.* Second, it produced the legal consequences that the County now seeks to vacate: It *required* westbound departing aircraft to follow the prescribed flight paths, thereby producing the "increased noise" of which the County complains. *See id.* Furthermore, because the FAA's final order was officially made available to the public on the same day that it went into effect, it also issued on that day. Therefore, the County's sixty-day statute of limitations for challenging TERPZ-6 under § 46110(a) began to run on February 4, 2016.

The County's contrary contention that the sixty-day clock didn't begin to tick until September 18, 2018, when the FAA rejected its "administrative petition for action," is unavailing because the FAA's letter of September 18 isn't a final action. While the FAA's letter did effectively terminate the agency's decisionmaking process with respect to its response to the County's grievances, it neither produced any legal consequences nor determined any rights or obligations. To the contrary, because (as the FAA pointed out) the County's petition wasn't rooted in any legal right, the FAA's rejection of it left the County in the same legal position it had occupied beforehand. The FAA's letter of September 18 thus fails on *Bennett*'s second prong. *See id.* (rejecting the City of Phoenix's argument that an analogous FAA letter was a reviewable final order).[3]

---

[3] The same conclusion also goes for the other three purported FAA actions that the County asks us to vacate or set aside, namely: (1) the FAA's purported abandonment of the BWI Roundtable; (2) the FAA's purported rescission of two noise abatement programs

The County's separate view that the sixty-day clock restarted on September 18, 2018 is equally mistaken. While courts have recognized a "general rule" whereby a party may obtain judicial review of an agency regulation "once the limitations period has run" by petitioning the agency to amend or rescind the regulations and then appealing the agency's decision, the "twist" is that this rule doesn't apply where the request "is predicated on an alleged *procedural* defect in the promulgation of the existing" regulation. *Am. Rd. & Transp. Builders Ass'n v. EPA*, 588 F.3d 1109, 1112 (D.C. Cir. 2009) (cleaned up). In *that* scenario, the petition must be viewed "as a direct challenge to the original enactment—which will be time-barred if it falls outside the period in which judicial review of the promulgation is permitted." *Id.*; *cf. NLRB Union v. Fed. Labor Relations Auth.*, 834 F.2d 191, 196 (D.C. Cir. 1987) (contrasting procedural and substantive infirmities for purposes of this general rule). Thus, because the County's administrative petition alleges only procedural defects in the FAA's promulgation of TERPZ-6—namely, that the FAA failed to take the proper steps to vet the procedure's likely noise impacts—the FAA's rejection of it didn't provide a fresh avenue to judicial review.

Finally, the County suggests that its petition is timely under the six-year limitations period for claims "against the United States" under 28 U.S.C. § 2401(a). We reject that

in effect at BWI; and (3) the FAA's purported abandonment of vectoring. Even assuming these actions truly occurred (which the FAA contests), none constitutes *final* agency action under (at least) *Bennett*'s second prong because, like the FAA's letter of September 18, 2018, none left the County in a different legal position than that which it occupied following the implementation of TERPZ-6. We likewise don't address the FAA's challenged *inaction* after receiving the MAA's letter of October 22, 2015 because the County fails to explain what action the FAA "unlawfully withheld or unreasonably delayed." *See* 5 U.S.C. § 706(1).

argument as well. Whereas that six-year limitations period "applies generally" to challenges brought directly under the APA, which lacks its own limitations period, *Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 267 (4th Cir. 2018), it doesn't apply to challenges brought under a statute that *does* provide its own limitations period, *see Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 187 (4th Cir. 1999). Thus, because the County brought its petition under § 46110(a), which specifies a sixty-day limitations period for orders by the FAA, the catchall provision of 28 U.S.C. § 2401(a) doesn't govern the timeliness of the County's petition.

Accordingly, because the County filed its petition some 950 days after the FAA issued the only final order challenged therein, the petition must be dismissed "unless [the County] had 'reasonable grounds' for delay." *Citizens Ass'n of Georgetown*, 896 F.3d at 427 (quoting 49 U.S.C. § 46110(a)). We turn now to consider that issue.

B.

Besides our recent decision involving these parties, we "have not previously opined on what constitutes reasonable grounds for delay" under § 46110(a). *Howard Cty.*, 2020 WL 3571784, at *2. Courts that have, however, have construed the exception narrowly, "rarely" finding reasonable grounds. *See City of Phoenix*, 869 F.3d at 969 (cleaned up).

Indeed, our sister circuits have generally found reasonable grounds for delay only where, within sixty days of issuing its final order, the FAA left the parties "with the impression that it would address their concerns by replacing its original order with a revised one," *id.* at 970 (cleaned up); or otherwise "created confusion" about the finality of its order, *Tulsa Airports Improvement Trust v. Fed. Aviation Admin.*, 839 F.3d 945, 950 (10th

17

Cir. 2016); *see also Safe Extensions, Inc. v. Fed. Aviation Admin.*, 509 F.3d 593, 603 (D.C. Cir. 2007) (FAA explicitly directed the petitioner to ignore its final order and stated that it was going to issue a new draft order); *Paralyzed Veterans of Am. v. Civil Aeronautics Bd.*, 752 F.2d 694, 705 n.82 (D.C. Cir. 1985) (FAA explicitly left its rulemaking docket open to receive additional comments from the public), *rev'd on other grounds by Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597 (1986). In cases where the petitioner "is primarily to blame for the delay, however," courts have generally "refused" to find reasonable grounds, even where the delay resulted from "a petitioner's honest and understandable mistake." *Howard Cty.*, 2020 WL 3571784, at *3 (collecting cases).

Here, the County rests its argument on *City of Phoenix*, one of the rare cases in which a court has excused a tardy petition under § 46110(a). In that case, the D.C. Circuit found reasonable grounds for delay where, after publishing the contested flight routes on September 18, 2014, the FAA

> repeatedly communicated—in an October public meeting, in a November letter, in a December public meeting, in a January letter, in a February decision to reconvene the Working Group, in an April letter, and in a May meeting with city officials—that the agency was looking into the noise problem, was open to fixing the issue, and wanted to work with the City and others to find a solution.

869 F.3d at 970. The court reasoned that such a pattern of "serial promises" to find a solution "would certainly have led reasonable observers to think the FAA might fix the noise problem without being forced to do so by a court." *Id.* And because petitioning for review might well "have shut down dialogue between the petitioners and the agency," the

18

court found it reasonable to treat litigation "as a last rather than a first resort when an agency behaves as the FAA did" there. *Id.*

This case "is quite different" than *City of Phoenix*. *See Maryland*, 952 F.3d at 292 (reaching the same conclusion with respect to Maryland's petition for review of procedures at Ronald Reagan Washington National Airport). As in *Maryland*, the missing ingredient in this case is "continuous . . . engagement" between the County and the FAA, *see id.*, especially within § 46110(a)'s sixty-day statute of limitations. Notably, whereas the City of Phoenix reached out to the FAA about noise complaints within two weeks of the implementation of the challenged routes and held a promising meeting together within a month, here the County waited 110 days—nearly twice as long as the limitations period—before it so much as voiced its concerns to the FAA. The County articulates no grounds, let alone reasonable grounds, for waiting so long to take this initial step in seeking administrative relief, and the record furnishes none.

To make matters worse, Howard County continued to wait around after the FAA failed to respond to its letter of May 26, and ignored requests for a prompt meeting. In fact, the record reflects that the first time these parties had a productive conversation about the County's noise concerns wasn't until the FAA *invited* the County, several more months later, to participate in the BWI Roundtable that *it* had established.

Similarly, on the flip side of the engagement coin, it wasn't until six months after the implementation of TERPZ-6, in August 2016, that the FAA suggested it would voluntarily address the collective concerns of the County, the MAA, and Maryland's then Congressional delegation. Whereas in *City of Phoenix* the FAA promised to address the

19

City's concerns within a month of its final order, here the agency went months without meaningfully responding to *any* of the noise complaints that it had received since October 2015. As the County's letter of May 24 itself noted, the efforts of its state and federal counterparts to engage the FAA had been going on "to no avail" for the better part of a year by the time the County got involved, J.A. 1210, and the FAA remained unresponsive for over two more months thereafter. Thus, even if the FAA did *eventually* respond in a manner similar to *City of Phoenix*, the County couldn't "wait indefinitely for an unresponsive agency," without regard to § 46110(a)'s fleeting review period, in the hope that the FAA would soon change its tune. *See Maryland*, 952 F.3d at 292.

In sum, the County's belated effort to engage the FAA in a voluntary fix to the noise impacts associated with TERPZ-6, together with the FAA's belated offer to pursue such a fix, provides no grounds "for not filing by the 60th day." 49 U.S.C. § 46110(a).

\* \* \*

Though we hold that the County's petition is untimely, we note that, as in a string of recent cases, the FAA's regulatory efforts in this case "were hardly a model of sound agency practice." *Maryland*, 952 F.3d at 292 (quoting *Citizens Ass'n of Georgetown*, 896 F.3d at 436); *see also City of Phoenix*, 869 F.3d at 970–75. We also recognize that the sixty-day window Congress has prescribed for judicial review of FAA action "is admittedly short," and reiterate that it serves as "a shield, not a sword." *Maryland*, 952 F.3d at 292. Because it serves that former purpose here, the petition for review is

20

*DISMISSED.*[4]

---

[4] We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before us, and argument would not aid in the decisional process.