# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**No. 20-1075**

**September Term, 2020**

FILED ON: JUNE 8, 2021

ARAPAHOE COUNTY PUBLIC AIRPORT AUTHORITY, ET AL.,
PETITIONERS

v.

FEDERAL AVIATION ADMINISTRATION AND STEPHEN DICKSON, IN HIS CAPACITY AS
ADMINISTRATOR OF THE FEDERAL AVIATION ADMINISTRATION,
RESPONDENTS

---

Consolidated with 20-1085

---

On Petitions for Review of an Order
of the Federal Aviation Administration

---

Before: SRINIVASAN, *Chief Judge*, WILKINS and KATSAS, *Circuit Judges*.

## <u>J U D G M E N T</u>

These consolidated petitions for review were considered on the record from the Federal Aviation Administration and on the briefs and oral argument of the parties. The panel has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). It is hereby

**ORDERED AND ADJUDGED** that the petitions for review be **DISMISSED**.

These consolidated petitions for review present various challenges to the Federal Aviation Administration's (FAA's) approval of the Denver Metroplex plan, which is a set of "changes to air traffic flows during the departure, descent, and approach phases" at Denver International Airport and nearby airports. Draft Environmental Assessment (EA) at 5-26, J.A. 183. Those changes are "intended to improve operational efficiency, increase flight path predictability, and reduce required controller-pilot voice communication." Finding of No Significant Impact (FONSI) at 9, J.A. 944.

The Denver Metroplex plan is part of the FAA's effort to comply with the Next Generation Air Transportation System (NextGen), "a mandate from Congress to modernize the nation's air-

traffic control system." *City of Phoenix v. Huerta*, 869 F.3d 963, 966 (D.C. Cir. 2017); *see, e.g.*, Vision 100—Century of Aviation Reauthorization Act, Pub L. No. 108-176, §§ 709–710, 117 Stat. 2490, 2582–85 (2003). "Among other . . . technologies that the [NextGen] legislation promotes," NextGen "directs the FAA to make greater use of RNAV"—that is, automated satellite technology onboard aircrafts, as opposed to ground-based air-traffic control—"and other such 'performance-based navigation procedures' at the nation's thirty-five busiest airports," including Denver International. *Howard Cnty. v. FAA*, 970 F.3d 441, 443 (4th Cir. 2020) (quoting FAA Modernization and Reform Act of 2012, Pub. L. No. 112-95, § 213, 126 Stat. 11, 46–50). Notably, the air-traffic-control procedures that make up the Denver Metroplex program do "not increase the number of aircraft operations in the DEN Metroplex airspace." FONSI at 9, J.A. 944.

The petitions for review before us are brought by six entities: the Arapahoe County Public Airport Authority (also known as Centennial Airport), the City of Greenwood Village, an air-charter company named Mountain Aviation, Inc., and three Colorado counties—Gilpin, Arapahoe, and Douglas Counties. Petitioners' claims fall into four categories. First, all petitioners contend that the FAA, in discharging its duties under the National Environmental Policy Act (NEPA), insufficiently considered various aspects of the Denver Metroplex plan's impact on the surrounding area. Second, they allege that the agency did not "encourage or truly permit community involvement in the Metroplex design process." Pet. Br. 45. Third, Gilpin County alone claims that the agency failed to meet its duties under the National Historic Preservation Act (NHPA). And finally, all petitioners argue that Congress, by mandating that the FAA perform certain studies in connection with NextGen, meant for the agency to suspend any further action on NextGen projects until those studies were completed.

We do not reach the merits of petitioners' arguments because we conclude that petitioners have failed to demonstrate their standing to bring their claims. To establish standing, petitioners must make the requisite showing of injury, causation, and redressability. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). While the second and third prongs—causation and redressability—are relaxed when, as here, petitioners claim procedural injury, petitioners must still establish that "the agency action threatens their concrete interest." *Mendoza v. Perez*, 754 F.3d 1002, 1010 (D.C. Cir. 2014). And at least one petitioner must make that showing of injury "for each claim they seek to press." *City of Bos. Delegation v. FERC*, 897 F.3d 241, 250 (D.C. Cir. 2018) (alteration and quotation marks omitted).

Of particular relevance here, "a petitioner whose standing is not self[-]evident should," in its "opening brief," "establish its standing by the submission of its arguments and any affidavits or other evidence appurtenant thereto at the first appropriate point in the review proceeding." *Sierra Club v. EPA*, 292 F.3d 895, 900 (D.C. Cir. 2002); *accord Twin Rivers Paper Co. v. SEC*, 934 F.3d 607, 614 (D.C. Cir. 2019). No petitioner's standing is self-evident here, and no petitioner has made the showing necessary to demonstrate its standing to bring any issue raised before us.

Consider, first, Gilpin County and the NHPA claims that it alone brings. Petitioners' opening brief fails to make any argument, let alone produce or point to any evidence, that Gilpin

County has standing to bring its three NHPA claims. That failure constitutes a forfeiture. *Sierra Club*, 292 F.3d at 900; *see Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019) ("A party forfeits an argument by failing to raise it in [its] opening brief."). "Although a party cannot forfeit a claim that we lack jurisdiction, it can forfeit a claim that we possess jurisdiction." *Scenic Am., Inc. v. DOT*, 836 F.3d 42, 53 n.4 (D.C. Cir. 2016). At oral argument, petitioners suggested that they did not need to make any argument about Gilpin County's standing in the section of their opening brief devoted to the issue of standing, because the County's standing was evident from the brief's arguments on the merits of the NHPA claims. But even the opening brief's discussion of the merits of the NHPA claims offered no affidavits or other evidentiary materials substantiating Gilpin County's standing, as our precedents require in the circumstances, *see, e.g.*, *Twin Rivers Paper Co.*, 934 F.3d at 614. Indeed, even after the FAA noted the lack of affidavits or citations to record evidence supporting Gilpin County's standing in petitioners' opening brief, petitioners made no attempt to correct the deficiency in their reply brief.

As to the remaining claims, which are brought by all six petitioners, we are again left without any affidavits or other evidence substantiating any petitioner's standing, and several petitioners' theories of standing suffer from legal flaws as well. First, the municipal petitioners—the City of Greenwood Village and Arapahoe, Douglas, and Gilpin Counties—claim standing only on behalf of their citizens. The doctrine of parens patriae, however, prohibits states from suing the federal government for harm caused only to their citizens except when permitted by statute, and we have previously held that the Administrative Procedure Act does not so permit. *Gov't of Manitoba v. Bernhardt*, 923 F.3d 173, 181 (D.C. Cir. 2019). Additionally, we have previously "presum[ed]" that municipalities are subject to the parens patriae doctrine because they "derive their existence from the state and function as political subdivisions of the state." *City of Olmstead Falls v. FAA*, 292 F.3d 261, 268 (D.C. Cir. 2002). In their reply brief, the municipal petitioners pivot to allege that the Metroplex has harmed the municipalities themselves, but they forfeited this argument by failing to raise it in their opening brief. *See Twin Rivers Paper Co.*, 934 F.3d at 613. Moreover, even if the city and counties' theory of standing on behalf of their citizens was without infirmity, it would still be lacking in any support. For example, petitioners offer no evidence demonstrating how "Metroplex will directly affect the efforts of Arapahoe and Douglas Counties to reduce and mitigate noise and other aircraft impacts." Pet. Br. 22. They thus fall short of their obligation to "either identify in [the administrative] record evidence sufficient to support [their] standing to seek review or, if there is none because standing was not an issue before the agency, submit additional evidence to the court of appeals." *Twin Rivers Paper Co.*, 934 F.3d at 613 (first alteration in original) (quoting *Sierra Club*, 292 F.3d at 899).

Mountain Aviation likewise fails to demonstrate its standing. As an initial matter, petitioners do not specify whether Mountain Aviation claims standing on its own behalf (that is, organizational standing) or on behalf of its members (that is, associational or representational standing). Each of those types of standing carries its own requirements. *See, e.g.*, *PETA v. USDA*, 797 F.3d 1087, 1093 (D.C. Cir. 2015) (organizational); *Sierra Club v. FERC*, 827 F.3d 59, 65 (D.C. Cir. 2016) (associational). Mountain Aviation has not identified which type of standing it claims, let alone how the company fulfills the requirements of either type. And what little is said in petitioners' opening brief lacks evidence to support any theory of Mountain Aviation's

standing.  Petitioners there stated only that the "FAA's decision . . . affects carriers such as Mountain Aviation who must operate within the new Metroplex rules," Pet. Br. 20, and that "the safety concerns regarding the new arrival and departure procedures constitute injury with respect to operators such as Mountain Aviation," *id.* at 21.  Mountain Aviation has not substantiated those passing assertions of injury.  "A petitioner seeking our direct review of agency action cannot rest on bare assertions" of that kind, but instead "must 'identify in th[e] record evidence sufficient to support its standing to seek review.'"  *Util. Workers Union of Am. Loc. 464 v. FERC*, 896 F.3d 573, 578 (D.C. Cir. 2018) (alteration in original) (quoting *Sierra Club*, 292 F.3d at 899).  Mountain Aviation has not done so here.

Finally, the Arapahoe County Public Airport Authority (ACPAA, or Centennial Airport) also fails to demonstrate its standing.  In petitioners' opening brief, they state only that "[t]he ACPAA has worked for years to promote compatible land use in the Airport Impact Area and has worked diligently with other local governments to minimize noise disruptions."  Pet. Br. 21.  In their reply brief, they elaborate somewhat, stating that Centennial "Airport maintains an FAA funded and approved part 150 Noise Compatibility Program."  Pet. Reply Br. 5.  Assuming petitioners would successfully show on the merits that the FAA gave inadequate consideration to the Metroplex's noise impacts, we are still left without any information, much less evidence, of what benefits are conferred upon Centennial Airport by its participation in the Noise Compatibility Program, or how noise impacts from the Denver Metroplex would interfere with realization of those benefits.  This case is thus unlike *City of Los Angeles v. National Highway Traffic Safety Administration*, in which the city and state petitioners were required to comply with Clean Air Act air quality standards and alleged that a new FAA standard made it more difficult to do so.  912 F.2d 478, 484–85 (D.C. Cir. 1990), *overruled in part on other grounds*, *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658 (D.C. Cir. 1996).  Here, ACPAA points to no record evidence, nor does it submit any affidavits, tending to show that increased noise would adversely affect its compliance with the Noise Compatibility Program.

In sum, because no petitioner has demonstrated standing to bring any claim in the consolidated petitions for review, we dismiss the petitions for lack of jurisdiction.

Pursuant to D.C. Circuit Rule. 36, this disposition will not be published.  The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing en banc.  *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(b).

**Per Curiam**

FOR THE COURT:
Mark J. Langer, Clerk

BY:  /s/
Daniel J. Reidy
Deputy Clerk